In re Rene R. ORTIZ, Douglas Lynn Lindsey and Betty Jane Lindsey, and Valerie Jones, Debtors.

Rene R. Ortiz, et al., Plaintiffs,

v.

Aurora Health Care, Inc., Defendant.

Bankruptcy Nos. 07–22466–svk, 08–27374–svk, 07–25336–svk.
Adversary No. 09–2199.

United States Bankruptcy Court, E.D. Wisconsin.

June 11, 2010.

Michael J. Watton, Milwaukee, WI, for Debtors and Plaintiffs.

Bartholomew F. Reuter, Frank W. Di-Castri, Foley & Lardner LLP, Milwaukee, WI, for Defendant.

### MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SUSAN V. KELLEY, Bankruptcy Judge.

### I. Background and Procedural Posture

This adversary proceeding was filed on June 23, 2009, and alleges that the Defendant, Aurora Health Care, Inc. ("Aurora"), attached invoices containing confidential medical records to proofs of claim filed by Aurora in the Plaintiff–Debtors' bankruptcy cases, in violation of Bankruptcy Rule

9037 and a Wisconsin statute governing the confidentiality of health care records.[1] On July 23, 2009, Aurora filed a Motion to Dismiss the Complaint. After briefing, including an amicus brief from the Wisconsin Hospital Association, on October 6, 2009, the Court dismissed Count I of the Complaint alleging that Aurora violated Bankruptcy Rule 9037. However, the Court did not dismiss Count II, but instead requested additional briefs on the limited issue of whether the medical records attached to Aurora's proofs of claim exceeded "the extent needed" for billing, collection and payment of the claims as described in Wis. Stat. § 146.82. After additional briefing, including an amicus brief filed by the Wisconsin Medical Society, on November 10, 2009, the Court held a hearing and denied the Motion to Dismiss Count II, finding under the test enunciated in the Supreme Court's decision in *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), that the Complaint set forth a "plausible claim" that Aurora's proofs of claim violated the Wisconsin statute.

Meanwhile, on July 31, 2009, the Debtors filed a Motion for Class Certification, which after briefing, the Court granted on March 9, 2010. Although a motion is pending, the Court has not yet ruled on whether the Bembenek adversary proceeding should be consolidated with this class action.

On December 11, 2009, the Debtors filed a Motion for Abstention, arguing that, since the only remaining claim is grounded in State law, and that law is unsettled, this Court should abstain to allow the issue to be determined in a Wisconsin court. Aurora objected and on December 30, 2009, filed a Motion to Withdraw the Reference of this adversary proceeding to the District Court, but did not seek to stay the proceedings in this Court. On January 5, 2010, this Court denied the Motion for Abstention. On March 19, 2010, the District Court denied Aurora's request to withdraw the reference.

On March 10, 2010, Aurora filed a Motion for Summary Judgment (the "Motion") with a three-pronged attack on the Debtors' Complaint: judicial estoppel, the absolute litigation privilege and the Debtors' lack of actual damages. A status conference was held on March 23, 2010, and the Court set a briefing schedule on the Motion. On May 18, 2010, after the parties had the opportunity to fully brief the issues notated in the Motion, the Court held oral argument. At the conclusion of that hearing, having rejected Aurora's judicial estoppel argument, the Court took under advisement the absolute litigation privilege damages issues, asking the Debtors to file a supplemental statement pointing to the places in the record demonstrating that they have incurred actual damages. That Supplement was filed on May 19, 2010. The Court having considered the briefs, argument of counsel and the record in this case now issues this Memorandum Decision which constitutes

---

**1.** Three adversary proceedings filed in this Court by Rene Ortiz, Douglas Lindsey and Valerie Jones (the "Debtors") have been consolidated for purposes of trial. On November 9, 2009, two other debtors, Kathy Bembenek and Susan Dandridge filed an action in the Circuit Court for Milwaukee County, alleging that Aurora attached confidential medical records to proofs of claim in their bankruptcies. On December 4, 2009, Aurora removed the Bembenek case to this Court, and Bembenek moved to remand the proceedings back to the State court. The Court denied the Motion for Remand in Bembenek on January 6, 2010 and in Dandridge on February 22, 2010. That same day, the Court also consolidated the Bembenek and Dandridge (collectively "Bembenek") adversaries into one proceeding. There is currently pending a Motion to Consolidate the Bembenek adversary proceeding with this adversary proceeding.

the Court's findings of fact and conclusions of law.

## II. Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and is appropriately granted when the moving party can establish that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are facts which "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1088 (7th Cir.2000). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

Summary judgment should be granted when a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P. C.,* 277 F.3d 882, 893 (7th Cir.2001). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Authority,* 367 F.3d 714, 726 (7th Cir.2004); *see also* FED.R.CIV.P. 56(e).

## III. Discussion

Aurora claims that Aurora is entitled to summary judgment based on three independent theories: (1) judicial estoppel; (2) the absolute litigation privilege; and (3) lack of proof of actual damages. These arguments will be addressed in order.

### A. Judicial Estoppel

■ Judicial estoppel "is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground." *United States v. Christian,* 342 F.3d 744, 747 (7th Cir.2003). This doctrine's purpose is "to protect the integrity of the judicial process by preventing litigants from deliberately changing positions according to the exigencies of the moment." *Matthews v. Potter,* 316 Fed.Appx. 518, 522 (7th Cir.2009) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749–750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)) (quotation marks omitted). Judicial estoppel may apply when:

> (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Christian,* 342 F.3d at 747. "Judicial estoppel is strong medicine, however, and it should not be used where it would work an injustice ... The rule looks toward cold manipulation and not an unthinking or confused blunder." *In re FV Steel & Wire Co.,* 349 B.R. 181, 185 (Bankr.E.D.Wis. 2006) (citation omitted).

■ The doctrine of judicial estoppel is normally invoked to prevent a party from asserting positions in successive judicial proceedings that are so "clearly inconsistent" that accepting the latter position would create the perception that at least one of the courts was deceived. *Matthews,* 316 Fed.Appx. at 522. The doctrine is frequently invoked in connection with bankruptcy proceedings, when a debtor has failed to disclose a claim but then pursues the claim after the bankruptcy is concluded. *See, e.g., Cannon–Stokes v. Potter,* 453 F.3d 446 (7th Cir.2006) (where debtor's schedules omitted any mention of claim, debtor was judicially estopped from pursuing claim post-discharge). However, "[e]stoppel is an equitable concept ... its application is therefore within the court's sound discretion. It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake, or where there is only an appearance of inconsistency between the two positions but both may be reconciled." *In re Cassidy,* 892 F.2d 637, 642 (7th Cir.1990) (internal citations and quotations omitted).

■ Aurora alleges that judicial estoppel prevents the Debtors from pursuing their claims because the Debtors failed to mention their claims against Aurora in their Schedules or Plans, and now seek to press claims that they previously denied. However, the claims here arose *after* the Debtors filed their bankruptcy petitions, when Aurora filed proofs of claim containing private medical information. Unlike the debtor in *Canon–Stokes,* these Debtors could not possibly have known about their claims against Aurora when preparing their Schedules. Aurora admitted as much at oral argument, but contends that judicial estoppel applies nonetheless because the Debtors have an ongoing duty to notify the Court and the trustee of post-petition claims. Failing to amend their Schedules after learning of the claims, Aurora argues, is akin to concealing assets, and the Debtors should be estopped from pursuing their claims.

To support its argument, Aurora primarily relies upon *Hamilton v. State Farm Fire & Casualty Company,* 270 F.3d 778 (9th Cir.2001), *Clarke v. UPS, Inc.,* 421 B.R. 436 (W.D.Tenn.2010), and *Young v. Town of Greenwood,* No. 08–602, 2009 WL 1924192 (W.D.La. June 26, 2009). However, these cases are easily distinguishable on the facts, as none involves a cause of action arising from the defendant's actions in a bankruptcy case where the subsequent complaint was brought before the same bankruptcy court.

■ Aurora also posits that the bankruptcy estate can *only* be notified of a potential claim by amending the bankruptcy schedules. While the Debtors arguably bore an ongoing duty to disclose the existence of their claims, *see* 11 U.S.C. §§ 521(1), 541(a)(7), an amendment to the bankruptcy schedules is only one of a variety of methods available to accomplish the disclosure. *See Matthews, supra* (citing *Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 898 n. 1 (6th Cir.2004)) (judicial estoppel inapplicable where debtor omitted potential claim against defendant from Chapter 7 schedules, but orally disclosed it to the trustee during meeting of creditors); *InterGen N.V. v. Grina,* 344 F.3d 134, 144 (1st Cir.2003) (judicial estoppel not appropriate where corporate plaintiff amended its complaint to revise factual allegations); *see also Jaeger v. Clear Wing Prods.,* 465 F.Supp.2d 879 (S.D.Ill.2006) (oral disclosure of claim to trustee rendered judicial estoppel inapplicable; summary judgment not warranted).

*Matthews v. Potter* is of particular relevance, not only because it supplies very recent Seventh Circuit authority, but also

because the facts are fairly similar to this case. In *Matthews,* a Chapter 7 debtor filed a cause of action that was not originally listed in her bankruptcy schedules, but she advised the trustee about the claim at the meeting of creditors. The Court of Appeals found the debtor's oral disclosure of the cause of action to the trustee sufficient to comply with the Code, and enough to prevent the application of judicial estoppel:

> Matthews, in whose favor we must draw all reasonable inferences, *see Germano v. Int'l Profit Ass'n,* 544 F.3d 798, 800 (7th Cir.2008), states in her affidavit that she informed the trustee about her pending administrative complaints at the meeting of creditors. for her Chapter 7 bankruptcy. In the district court, the [defendant] never acknowledged this assertion and instead argued only that Matthews could not avoid judicial estoppel by reopening the bankruptcy case. But this position, which ignores *Eubanks,* assumes that Matthews's bankruptcy disclosures are measured solely by the information provided in her initial schedules filed with the Chapter 7 petition. The Bankruptcy Code contemplates the possibility that a debtor may later discover and inform the trustee of additional assets not already listed on the schedules, given the trustee's obligations to investigate the debtor's financial affairs, *see* 11 U.S.C. § 704(a)(4), and to examine the debtor at the meeting of creditors, *see id.* § 341; *see also* FED R. BANKR.P. 1009 (providing that debtor may freely amend a "voluntary petition, list, schedule, or statement ... as a matter of course at any time before the case is closed"); *In re Ladd,* 450 F.3d 751, 755 (8th Cir.2006) (noting that

"the general rule allows liberal amendment"); *In re Michael,* 163 F.3d 526, 529 (9th Cir.1998) (same). The trustee commonly questions the debtor to search for assets, explore potential claims, and to determine whether the case should be closed as a no-asset case or whether further investigation is needed. *See* 11 U.S.C. § 341; 2 COLLIER BANKRUPTCY PRACTICE GUIDE P. 26.03[2] (Alan N. Resnick & Henry J. Sommer eds., 2006). That is precisely what happened here, at least as far as the record shows, and the inference we draw is that following Matthews's oral disclosure the trustee determined that her discrimination claims were not sufficiently valuable to warrant pursuing them on behalf of the creditors.

*Matthews,* 316 Fed.Appx. at 522–23.

In this case, the Debtors advised their Trustees of their claims against Aurora,[2] and significantly, the Debtors filed their Complaint in the bankruptcy cases where the claims against Aurora arose. Unlike the cases cited by Aurora, the Debtors did not play "hide the ball" in an attempt to keep this cause of action from the Trustee or their creditors. The Debtors' failure to amend the schedules was not an effort to mislead or dupe the Court, and it is hard to understand how judicial estoppel can even apply when the "undisclosed lawsuit" is filed in the very same Bankruptcy Court where the schedules were filed. Under Aurora's theory, before a debtor could file a counterclaim to a proof of claim or a debtor in possession could file a bankruptcy court adversary proceeding to avoid a post-petition transfer to a creditor, the debtor would be required to amend the schedules to be sure that there was due notice was given of the claim and avoid the

---

**2.** The Debtors filed Declarations from their respective Trustees confirming that the Debt-

ors had notified the Trustees about the claims.

effect of judicial estoppel. Such machinations are clearly not required and would be an unwarranted extension of this equitable doctrine.

Therefore, acknowledging and applying the inference this Court must draw in favor of the Debtors, adequate notification was given to the bankruptcy estate when the Debtors made oral disclosures to the Trustees of their claims against Aurora, and also by the filing of the adversary proceeding in this Court. Summary judgment on the basis of judicial estoppel is denied.

### B. Absolute Litigation Privilege

 Aurora's second argument is that because the Complaint is premised entirely on statements contained in court pleadings, and that, in Wisconsin, statements in pleadings are absolutely privileged, the Complaint should be dismissed as a matter of law. As explained by the Wisconsin Supreme Court in *Bergman v. Hupy,*

> [P]arties and counsel are immune from liability for relevant statements in pleadings and otherwise in the course of judicial proceedings. This absolute privilege as to statements made during judicial proceedings has been summarized to be: Parties to judicial proceedings are absolutely exempt from responsibility for libel on the ground of privilege for any defamatory matter published in the course of judicial proceedings, subject to the possible qualification that such defamatory matter is pertinent or relevant to the case.

64 Wis.2d 747, 750, 221 N.W.2d 898 (1974) (internal quotations and citations omitted). The Seventh Circuit recognized the principles set forth in *Bergman* in *Niedert v. Rieger,* 200 F.3d 522, 526 (7th Cir.1999), and also found "[t]his immunity extends to statements made in pleadings, in affidavits

or in open court—again, so long as the statements are relevant to the litigation." Aurora relies heavily on *Snow v. Koeppl,* 159 Wis.2d 77, 464 N.W.2d 215 (Wis.Ct. App.1990), but that case is distinguishable.

In *Snow,* the family court ordered a family to undergo psychological evaluation in connection with the ex-husband's request for visitation rights with the minor children. The court contacted a psychologist to perform the evaluation. The psychologist learned that the ex-wife had previous counseling sessions at the same clinic where the psychologist worked, and used some of the information from those sessions in her report. The ex-wife sued the psychologist, her insurance company and the clinic for breach of confidentiality and invasion of privacy. The trial court dismissed the complaint on the grounds that the psychologist was immune from liability as a quasi-judicial officer. The Court of Appeals affirmed, citing the policy reasons for the litigation privilege that if parties are "shadowed by the fear that by some mistake as to facts or some excess of zeal, or by some error, they may be subjected to harassing litigation, they may well feel that justice is too dearly brought and abandon its pursuit.... The paramount public interest here intervenes and overrides considerations of mere private right between the parties." *Id.* at 81, 464 N.W.2d 215 (internal quotations omitted). Specifically, the Court of Appeals held: "Here, a directive to perform a psychological evaluation should, in keeping with the sound reasons for immunity, be liberally construed to protect the court official from liability for the examination and use of reports of earlier psychological counseling or therapy." It is questionable whether the Court of Appeals would "liberally construe" the filing of a proof of claim by a creditor seeking to be paid in a bankruptcy case, especially considering the electronic

filing system used by the bankruptcy courts, under which all pleadings, unless filed under seal, are available for public view via the Internet.

More significantly, the *Snow* court did not address whether the psychologist's incorporation of the prior counseling records into her report violated Wis. Stat. § 146.82, and consequently did not consider whether the statute could have trumped the litigation privilege.[3] Courts in other states have squarely faced this issue. In *Wynn v. Earin*, 163 Wash.2d 361, 181 P.3d 806 (2008), the Supreme Court of Washington held that the state's Health Care Information Act prevailed over the common law litigation privilege. In *Wynn*, a psychologist gave information to a guardian ad litem without a release in hand as required by the statute. The psychologist claimed that the litigation privilege (also called witness immunity) protected her from liability under the statute. The Court of Appeals denied this claim, and the Washington Supreme Court affirmed. Recognizing the same policy reasons behind the litigation privilege as described by the Wisconsin Court of Appeals in *Snow*, the Supreme Court of Washington concluded that the policy reasons behind the medical privacy act were stronger:

> As the Court of Appeals recognized, the public policy justification for applying the witness immunity rule is outweighed by the interest in protecting confidential disclosures made during medical treatment. Consultations with confidential advisors should not require a warning that anything disclosed will be available to potential future litigation adversaries and may be used against the client in court.

*Id.* at 373, 181 P.3d 806 (internal quotations and citations omitted).[4]

Aurora argues that the legislature is presumed to know the common law in the area in which it is legislating, and that this Court should not construe Wis. Stat. § 146.82 in derogation of the common law in the absence of express legislative intent to change the law. The same argument was rejected in *Wynn*. That court determined that the statute's provisions governing release of medical records during or in preparation for judicial proceedings under certain circumstances showed that the statute applies in judicial proceedings, and that the damages measure demonstrated legislative intent to allow a cause of action notwithstanding the witness immunity rule. Similarly, Wis. Stat. § 148.82 clearly applies in judicial proceedings. For example, § 146.82(1) carves out an exception to the confidentiality rules for "testimony authorized under § 905.04(4)(h)," suggesting that testimony in other circumstances is subject to the statute. Several exceptions to the statute would come into play in judicial or administrative proceedings. *See, e.g.*, Wis. Stat. § 146.82(4), (9), 18(m).

---

3. Apparently, the psychologist who had been contacted by the family court to perform the psychological evaluation did not argue that her report was protected by the exception to § 146.82(4), which provides a defense for health care records disclosed "under a lawful order of a court of record."

4. Aurora has not cited a case in which an alleged violation of Wis. Stat. § 148.82 was dismissed based on the litigation privilege. And none of the cases cited by Aurora that extended the litigation privilege to a bankruptcy proof of claim dealt with a statute that clashed with the common law, as § 146.82 does here. *See Heavrin v. Nelson*, 384 F.3d 199 (6th Cir.2004) (fraudulent statements made in proof of claim); *Gierbolini Rosa v. Banco Popular de P.R.*, 930 F.Supp. 712 (D.P.R.1996) (addressing proof of claim and burden switching effect under 32 L.P.R.A. § 3144); *Christensen v. Drossos*, 2005 UT App 170, 2005 WL 851700, 2005 Utah App. LEXIS 180, (Utah Ct.App.2005) (allegedly defamatory statements made in proof of claim).

And, Wis. Stat. § 146.84 provides damages for violations of § 146.82, implying that the Wisconsin legislature, like its counterpart in Washington, intended to allow a cause of action for violating the statute, notwithstanding the litigation privilege.

Other courts have held that medical privacy statutes supersede the common law litigation privilege.[5] The *Wynn* court found support for its conclusion in *Renzi v. Morrison*, 249 Ill.App.3d 5, 618 N.E.2d 794, 188 Ill.Dec. 224 (1993). In *Renzi*, a psychiatrist who had treated a mother and counseled her on her marriage volunteered to testify in favor of the father at a custody proceeding. The mother's objection to the testimony was overruled, and the psychiatrist revealed communications, testified to results of psychological tests and offered an opinion of the mother's emotional health. After the trial judge found this information " 'tipped the balance of the scale' " and granted custody to the father, the mother sued the psychiatrist, who claimed common law witness immunity. The *Renzi* court determined that the confidentiality provisions of Illinois' Mental Health and Developmental Disabilities Confidentiality Act, 740 Ill. Comp. Stat. 110/1–17 (2006), prevailed over the common law witness immunity rule. Rejecting the argument that the legislature had to specifically abolish the witness immunity rule, the court reasoned that the statute showed the legislature intended to modify the common law rule because it provided for a court determination of admissibility of confidential information and provided that any person aggrieved by a violation of the act could bring an action for damages.

In determining that the litigation privilege does not protect violators of medical confidentiality statutes, the Illinois courts have held that any common law right to witness immunity that might exist "must give way" to the statute: "The statute clearly indicates the legislature intended to modify absolute common law witness immunity in order to provide a remedy of damages against persons who violate the act." *Renzi*, 249 Ill.App.3d at 8, 188 Ill. Dec. 224, 618 N.E.2d 794. *See also Mandziara v. Canulli*, 299 Ill.App.3d 593, 598, 233 Ill.Dec. 484, 701 N.E.2d 127 (Ill.App. Ct. 1st Dist.1998) (litigation privilege does not provide defense for violation of statute that is carefully drawn to maintain the confidentiality of mental health records).

By providing a remedy for the violation of the statute protecting patient health

---

**5.** Another statute that has been held to abrogate the common law litigation privilege is the Fair Debt Collection Practices Act (FDCPA). In *Heintz v. Jenkins*, the Supreme Court considered whether the FDCPA applies to a lawyer who 'regularly,' through litigation, tries to collect consumer debts. 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Although the Court did not address common law or any other form of immunity, it thoroughly examined whether Congress intended to apply the FDCPA to lawyers' litigation activities. A 1977 version of the statute exempted from its reach "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." *Id.* at 294, 115 S.Ct. 1489. However, in 1986 Congress repealed this exemption in its entirety "without creating a narrower, litigation-related, exemption to fill the void." *Id.* at 294–95, 115 S.Ct. 1489. The Supreme Court ultimately concluded that as amended the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299, 115 S.Ct. 1489. The Court noted that "alternative language designed to keep litigation activities outside the Act's scope" was proposed but not enacted. Id. at 298, 115 S.Ct. 1489. Numerous cases since then have concluded that in actions alleging violations of the FDCPA, "any litigation immunity doctrine is trumped by the Court's holding in *Heintz*." *Barany–Snyder v. Weiner*, 2007 WL 210411 at *9, 2007 U.S. Dist. LEXIS 5137 at *33 (N.D.Ohio Jan. 24, 2007) (collecting cases), *aff'd* 539 F.3d 327 (6th Cir.2008).

care records and contemplating application of the statute in judicial proceedings, the Wisconsin legislature must have intended that § 146.82 trumps the absolute litigation privilege in the same way that the Washington and Illinois statutes do. Indeed, in *Kensington Dev. Corp. v. Israel,* 142 Wis.2d 894, 419 N.W.2d 241 (1988), the Wisconsin Supreme Court recognized that a statute superseded the litigation privilege in a similar context. In *Kensington,* the Supreme Court found that because the statute at issue would be essentially rendered void by application of the litigation privilege, it could not be applied, stating:

> The absolute protection of pleadings was a judicially created doctrine. However, with the enactment of § 706.13, Stats., the legislature has, in effect, modified this doctrine as it relates to the filing of a lis pendens and rendered it a conditional privilege. If the absolute privilege rule is applied, the slander of title statute, § 706.13, Stats., would be nullified because it would be virtually impossible to assert a claim if all communications in judicial proceedings relating to property were absolutely privileged. We hold, as did the court of appeals, that when a lawsuit is commenced pursuant to § 706.13, the absolute privilege rule does not apply.

*Kensington,* 142 Wis.2d at 903, 419 N.W.2d 241. Similarly in this case, application of the litigation privilege would frustrate the purpose and function of the health care records confidentiality statute. The Debtors have asserted that medical records attached to Aurora's proofs of claim violated § 146.82, and to blanket those records with the litigation privilege would invalidate the express language of the statute that medi-

cal records may be disclosed *only* to "the extent that the records are needed for billing, collection or payment of claims." Wis. Stat. § 146.82(3).

The limitation in the statute provides another defense to the litigation privilege. Even if the litigation privilege applies, it is only applicable to the extent the documents "bear a proper relationship to the issues" *See Bergman,* 64 Wis.2d at 749, 221 N.W.2d 898. As the Wisconsin Supreme Court explained, "This does not mean, of course, that parties or their counsel can use judicial proceedings as a shield to recklessly and wantonly besmirch the character of third parties or opposing parties by oral or written statements having no relation to the issues involved." *Bussewitz v. Wisc. Teachers' Ass'n,* 188 Wis. 121, 124, 205 N.W. 808, 811 (1925) (general rule that parties are not, in all cases, absolutely exempted from liability; rather, must be "pertinent and relevant" to the issues to qualify); *see also Rady v. Lutz,* 150 Wis.2d 643, 444 N.W.2d 58 (Wis.Ct. App.1989) (statements that are plainly irrelevant and impertinent and voluntarily made not privileged).

In this case, Aurora has not persuaded the Court that the Debtors' medical conditions and treatments are relevant to the matter at issue: the amount due to Aurora as stated in the proofs of claim. The applicable proof of claim form even suggests that attachments to proofs of claim be redacted, refuting Aurora's suggestion that the entire invoice, including a description of the medical treatment, was required to be attached to the claim. *See* FED. R. BANKR.P. Official Form 10 (2005–2007).[6] If the patient health care records

---

**6.** Aurora incorrectly argues that the Bankruptcy Rules in effect when the claims were filed required the medical records to be included with the billing invoices. Although

the instructions on the proof of claim form now are more specific with respect to confidential health care information, the instructions when these claims were filed suggested

should have been redacted or summarized, and if the health care confidentiality statute only permits the disclosure of those records "to the extent the records are needed" for collection, the standards of pertinence and relevance necessary for application of the litigation privilege were not satisfied by these records. Accordingly, either the litigation privilege does not apply to protect records disclosed in violation of Wis. Stat. § 146.82 because the statute trumps the common law privilege, or the records in this case were not relevant or pertinent to the matter at issue (the amount of money due to Aurora), and therefore Aurora is not entitled to summary judgment based on the litigation privilege.

## C. Actual Damages

■ Aurora strenuously argues that the Debtors have not provided evidence of damages, and because proof of actual damages is an essential element of their cause of action,[7] the Debtors' claims cannot survive a motion for summary judgment. Aurora correctly asserts that § 146.84 requires proof of actual damages. (*See* Def.'s Reply Br. Supp. Mot. Summ. J. 20–21.) The legislative history is unimpeachable that actual damages is a prerequisite to recovery under § 146.84 to prevent "the possibility of frivolous or nuisance litigation." *Id.* (citing *Hannigan v. Liberty Mut. Ins. Co.*, 230 Wis.2d 746, 604 N.W.2d 33 (1999) (in turn citing Governor Tommy Thompson veto message on 1991 A.B. 91)

(1991 Wis. Act 39 at 32–33)); *see also Landwehr v. Landwehr*, 2006 WI 64, ¶ 25, 291 Wis.2d 49, 68, 715 N.W.2d 180, 189 ("governor's veto message is part of the legislative history and is evidence of legislative intent"); *Juneau County v. Courthouse Employees, Local 1312*, 221 Wis.2d 630, 649, 585 N.W.2d 587, 594 (1998) (same). A failure to prove actual damages would be fatal to the Debtors' claims because there is no right to exemplary damages under § 146.84 unless actual damages are proven.

In support of its Motion, Aurora provided the transcripts of depositions taken of the named Plaintiffs. (*See* Def.'s Br. Supp. Mot. Summ. J, Ex. H, I, J (filed under seal)) In these depositions, each of the Debtors readily admitted that he or she cannot point to any specific evidence of actual harm or actual damages that stems from Aurora's release of the health care records. *Id.* For example, Douglas Lindsey testified that he was "unaware of any harm" that he incurred as a result of the filing of the proof of claim. (Exhibit J at 58.) Valerie Jones testified "I couldn't point to any [damages] at this particular time but I don't know anything about the future." (Exhibit I at 34.) Accordingly, Aurora has successfully demonstrated the absence of proof of a required element of the Debtors' cause of action. *See Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548 (moving party need not submit materials negating plaintiff's claim; it is sufficient to point out to the court "that there is an absence of

---

that the attachments should be "redacted" and that a summary would be appropriate. The instructions for Official Bankruptcy Form 10 (2005–2007) stated:

**Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies

of documents providing evidence of perfection of a security interest. You may also attach a summary.

7. Sections 146.84(1)(b) and (bm) of the Wisconsin Statutes provide for damages to anyone injured by intentional or negligent violations of Wis. Stat. § 146.82, including exemplary damages when actual damages are shown. *See* Wis. Stat. § 146.84 (2010).

evidence to support the nonmoving party's case"). Once Aurora met this burden, the Debtors as "[t]he non-moving party ... must identify specific facts to establish that there is a genuine triable issue." *Bilow,* 277 F.3d at 893. "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas,* 367 F.3d at 726.

In response, at argument, the Debtors' counsel asserted that the existence of actual damages is in dispute, but could not point to any specific evidence in the record to back up his claims. The Court requested that counsel file a post-hearing Supplement directing the Court to the evidence of actual damages in the record, and on May 19, 2010 counsel filed such a Supplement.

■ However, review of the Supplement and the record in its entirety shows that the only evidence submitted by the Debtors with regard to their damages are the *exact same* deposition transcripts that Aurora submitted to show a lack of evidence in the record. (*See* Pls.' Reply Br. Supp. Mot. Class Cert., 7 n. 28; Sep. Statement Facts, Ex. E (filed under seal)) The Debtors did not file an Affidavit or Declaration detailing any damages or harm that they have suffered as a result of the filing of the proofs of claim. The Debtors presented no evidence of actual damages at all, and this glaring omission is fatal to their cause of action. The Debtors' testimony with respect to damages confirmed that the Debtors are not aware of any damages, although there may be some damages that the Debtors do not know about, and that the Debtors may have some damages in the future. Speculative, unknown or possible future damages smack of the type of claim the Governor had in mind when he exercised his veto and required a plaintiff to prove actual damages under § 146.84. A damages

claim supported only by nebulous statements simply does not meet the standard of proof required to defeat summary judgment. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Lucas,* 367 F.3d at 726. The Court recognizes that inferences must be drawn in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). But, even construing all of the facts in the light most favorable to the Debtors, there is no genuine issue of material fact in this record as to the existence of actual damages. *See Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) (court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable").

The United States Supreme Court requires summary judgment be granted when a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. This is such a case because the Debtors have failed to demonstrate actual damages, an essential element of their claim.

## IV. Conclusion

Although the attachment of confidential health care records to the proofs of claim is not protected by the litigation privilege, nor barred by the doctrine of judicial estoppel in these cases, the Debtors' failure to demonstrate actual damages compels the conclusion that Aurora's Motion should be granted. Therefore, Aurora's Motion for Summary Judgment is denied as to the doctrine of judicial estoppel and the absolute litigation privilege. However, since Aurora has established that there is no genuine issue of material fact as to the

Debtors' lack of actual damages, Aurora's Motion will be granted, and Aurora is entitled to judgment dismissing the Complaint on that basis. An Order will be entered consistent with this Memorandum Decision.