# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 10-3465 & 10-3466

IN RE:

RENE R. ORTIZ, DOUGLAS L. LINDSEY, and
VALERIE JONES,

*Debtors.*

RENE R. ORTIZ, DOUGLAS L. LINDSEY, and VALERIE JONES,

*Plaintiffs-Appellants,*

*v.*

AURORA HEALTH CARE, INC.,

*Defendant-Appellee.*

IN RE:

KATHY BEMBENEK and
SUSAN DANDRIDGE,

*Debtors.*

KATHY BEMBENEK and SUSAN DANDRIDGE,

*Plaintiffs-Appellants,*

*v.*

AURORA HEALTH CARE, INC.,

*Defendant-Appellee.*

Appeals from the United States Bankruptcy Court
for the Eastern District of Wisconsin.
Nos. 09-02199 & 09-02469—**Susan V. Kelley**, *Bankruptcy Judge.*

ARGUED FEBRUARY 22, 2011—DECIDED DECEMBER 30, 2011

Before WILLIAMS and TINDER, *Circuit Judges*, and
GOTTSCHALL, *District Judge.*[*]

TINDER, *Circuit Judge.* Wisconsin medical provider
Aurora Health Care, Inc. filed proofs of claim in an esti-
mated 3,200 bankruptcy cases in the Eastern District
of Wisconsin from June 2003 to December 2008 that
listed the debtors' medical treatment information. The
filings were public and available on the court's docket.
Two groups of debtors filed separate class action
lawsuits against Aurora under a Wisconsin statute that
allows individuals to sue if their health care records are
disclosed without permission. *See* Wis. Stat. § 146.84.
The bankruptcy judge granted Aurora summary judg-
ment in both cases. We granted direct appeal. But
granting direct appeal, although appearing proper then,
was improvident given the Supreme Court's recent
holding in *Stern v. Marshall* that bankruptcy judges lack
authority under Article III of the Constitution to enter

_____

[*] The Honorable Joan B. Gottschall, United States District
Court for the Northern District of Illinois, sitting by designation.

final judgments on claims that constitute "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." 131 S. Ct. 2594, 2609 (2011) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)). Like the debtor's counterclaim in *Stern v. Marshall*, the debtors' claims are based on a state law that is "independent of the federal bankruptcy law" and "not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611. The responsibility for deciding the debtors' claims "rests with Article III judges in Article III courts." *Id.* at 2609. Even though Congress gave the bankruptcy judge statutory authority to adjudicate the debtors' claims as "core" matters under 28 U.S.C. § 157(b), *Stern v. Marshall* reveals the absence of constitutional authority for the bankruptcy judge to enter summary judgment, or any form of final judgment, on the debtors' claims. Without a final judgment we lack a statutory basis for appellate jurisdiction. Thus, we must dismiss these appeals.

## I. Background

The debtors alleged that Aurora violated Wisconsin Statute section 146.82 by filing proofs of claim revealing their medical information. Wisconsin Statute section 146.82(1) mandates that "[a]ll patient health care records shall remain confidential" with certain exceptions in section 146.82(2). The debtors sought actual damages, statutory exemplary damages of $25,000 per class member, and their costs and fees under Wisconsin Statute

section 146.84(1)(b) for Aurora's alleged willful violation of section 146.82. A first set of debtors, appellants Rene Ortiz, Douglas Lindsey, and Valerie Jones (the "Ortiz debtors"), filed a class action adversary complaint in the U.S. Bankruptcy Court for the Eastern District of Wisconsin. (The district court refers all bankruptcy cases to its bankruptcy judges. *See* 84-1 Order of Reference, *available at* www.wieb.uscourts.gov/index.php/orders-rules/rules/general-orders (last visited Dec. 22, 2011).) The complaint defined the class as all Chapter 13 filers in Wisconsin's Eastern District where Aurora filed proofs of claim disclosing confidential medical information. A second pair of debtors, Kathy Bembenek and Susan Dandridge (the "Bembenek debtors"), filed a class action complaint in a Wisconsin state court based on the same statute but expanded the proposed class to all of Wisconsin. Aurora removed the Bembenek debtors' case to the bankruptcy court under 28 U.S.C. § 1452, which authorizes removal of all cases arising under Title 11 or arising in or related to cases under Title 11. *See* 28 U.S.C. §§ 1334 & 157(a).

Both sides sought to avoid litigating the case in the bankruptcy court but also opposed the others' proposed forum. The Ortiz debtors filed a motion for the bankruptcy judge to abstain from jurisdiction in favor of a Wisconsin court, *see* 28 U.S.C. § 1334(c)(1) & (2), and the Bembenek debtors filed a motion for the bankruptcy judge to remand the case back to the Wisconsin court, *see* 28 U.S.C. § 1452(b). Aurora filed motions in both cases seeking to have the district court withdraw the reference from the bankruptcy judge. *See* 28 U.S.C. § 157(d).

The bankruptcy judge denied the abstention and the remand motions for essentially the same reason: the cases constituted core proceedings because the debtors' claims could only arise in a bankruptcy context and Congress included the allowance or disallowance of claims and counterclaims by the estate against persons filing claims against the estate in its definition of core proceedings. *See* 28 U.S.C. § 157(b)(2)(B) & (C). The district court then denied Aurora's motions to withdraw the reference because the debtors' claims were core proceedings involving counterclaims by the debtors' bankruptcy estate against a claimant. *See id.* § 157(b)(2)(C). The district court found that the bankruptcy court was well-suited to address whether bankruptcy law required Aurora to disclose the material to which the debtors objected and that it was familiar with the cases' facts and circumstances.

The bankruptcy judge then dismissed the Ortiz debtors' complaint on Aurora's motion for summary judgment because it found that Wisconsin Statute section 146.84 required proof of actual damages and that the debtors failed to point to specific evidence in the record to support the debtors' assertion that the existence of actual damages was in dispute. *In re Ortiz*, 430 B.R. 523, 534-35 (Bankr. E.D. Wis. 2010). The bankruptcy judge also dismissed the Bembenek debtors' case for the same reasons. Aurora joined in the debtors' motions for certification of a direct appeal under 28 U.S.C. § 158(d)(2), which gives us jurisdiction over appeals that would normally go to the district court under 28 U.S.C. § 158(a). The bankruptcy judge granted the motions under

28 U.S.C. § 158(d)(2)(B)(ii), which states that if the bankruptcy court "receives a request made by a majority of the appellants and a majority of appellees" to certify an appeal, the bankruptcy court "shall make the certification." A motions panel of our court authorized the parties to proceed as a direct appeal, *see id.* § 158(d)(2)(A), and the cases were consolidated.

## II. Analysis

When we held argument in this case on February 22, 2011, our appellate jurisdiction appeared secure under 28 U.S.C. § 158(d)(2), which gives us jurisdiction to hear appeals that would typically go first to the district court. Specifically, we "have jurisdiction of appeals described in the first sentence of" § 158(a) if the bankruptcy judge certified the matter and we authorized it, *id.* § 158(d)(2)(A), as happened here. The appeals described in the first sentence of § 158(a) are those:

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees; and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

When we authorized the appeal, Aurora and the debtors maintained that the appeals were from final judgments or orders—namely, the bankruptcy judge's grant of summary judgment and dismissal of the debtors' complaints. Dubbing the bankruptcy judge's decision a final judgment appeared correct then, but that was before the Supreme Court decided *Stern v. Marshall*, which held that bankruptcy judges lack authority under Article III to enter final judgments on claims that constitute "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." 131 S. Ct. at 2609 (quoting *N. Pipeline*, 458 U.S. at 90 (Rehnquist, J., concurring in judgment)).

Because we have an independent duty to determine whether we have jurisdiction, *e.g.*, *Maddox v. Love*, 655 F.3d 709, 715 (7th Cir. 2011), we ordered supplemental briefing on three issues: (1) whether the bankruptcy judge had constitutional authority to issue final judgments, orders, or decrees when it ordered the debtors' complaints dismissed; (2) whether those orders should be considered interlocutory orders or decrees within the meaning of 28 U.S.C. § 158(a)(3), final decisions, judgments, orders, or decrees within the meaning of 28 U.S.C. § 158(d)(1), or proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1); and (3) given the answers to these questions, whether we had authority under 28 U.S.C. § 158(d)(2)(A), or any other provision, to grant direct appeal.

The first question requires a close reading of *Stern v. Marshall*. Although the Court noted that the question

presented was "narrow," it was quite significant as Congress "may no more lawfully chip away at the authority of the Judicial Branch than it may eliminate it entirely." 131 S. Ct. at 2620. The Court held that Article III prohibited Congress from giving bankruptcy courts authority to adjudicate claims that went beyond the claims allowance process. *Id.* at 2618. The decision rebuffed an intrusion into the Judicial Branch that would "compromise the integrity of the system of separated powers and the role of the Judiciary in that system, even with respect to challenges that may seem innocuous at first blush." *Id.* at 2620.

But before we address the constitutional question, we must establish that Congress gave bankruptcy courts authority to issue final judgments on the debtors' claims. 28 U.S.C. § 1334(a) gives district courts "original and exclusive jurisdiction of all cases under title 11." Under 28 U.S.C. § 157(a), district courts may refer "any or all" bankruptcy cases and proceedings to the district's bankruptcy judges. Congress delineated three types of bankruptcy proceedings: those (1) "arising under title 11," (2) "arising in" a title 11 case, and (3) "related to a case under title 11." 28 U.S.C. § 157(a). The type of proceeding matters for determining whether a bankruptcy court had statutory authority to issue a final judgment. Congress permits bankruptcy judges to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern*, 131 S. Ct. at 2605. The Court rejected an argument that assumed the ex-

istence of a category of core proceedings that neither arise in a Title 11 case or under Title 11. Instead, there are two options: (1) core proceedings that arise in a Title 11 case or arise under Title 11, and (2) those that otherwise relate to a case under Title 11. *Id.* Under 28 U.S.C. § 157(b)(1), when a proceeding is core, a bankruptcy judge "may enter appropriate orders and judgments, subject to review under" 28 U.S.C. § 158. This statutory authorization includes authority to enter final judgments. *Stern*, 131 S. Ct. at 2605.

The debtors' claims fit within the category of "arising in" cases generally defined as "administrative matters that arise *only* in bankruptcy cases." *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (quoting *In re Commercial Loan Corp.*, 363 B.R. 559, 565 (Bankr. N.D. Ill. 2007)). Like the state-law claims in *Repository Technologies*, the debtors' claims would have "no existence outside of the bankruptcy," *id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)), and are thus deemed "arising in" a bankruptcy case because the claims are "predicated on the defendants' participation in" the debtors' bankruptcies, *id.* at 720; *see also Grausz v. Englander*, 321 F.3d 467, 471-72 (4th Cir. 2003) (finding a debtor's claim against a law firm for malpractice in his bankruptcy within "arising in" jurisdiction because it would have "no practical existence *but for* the bankruptcy" (internal quotation marks omitted)). Because the debtors' claims arise in their bankruptcies, they are core matters Congress purported to give the bankruptcy judge authority to adjudicate. The debtors' claims are also "core proceedings" under 28 U.S.C. § 157(b)(2)(C)'s broad inclusion of all

"counterclaims by the estate against persons filing claims against the estate."

But because congressional authorization must, of course, be constitutional, we now examine whether Congress exceeded the limits of Article III in authorizing bankruptcy judges to enter final judgments in the debtors' claims. *Stern v. Marshall* gives us a definitive answer based on "very basic principles" of Article III. 131 S. Ct. at 2600.

Vickie Lynn Marshall, more commonly known as Anna Nicole Smith, was married to wealthy Texan J. Howard Marshall II. *Id.* at 2601. Before J. Howard died, Vickie sued in Texas state probate court claiming J. Howard's son E. Pierce Marshall fraudulently induced J. Howard to exclude her from what eventually would be J. Howard's will. *Id.* After J. Howard died, Vickie filed for bankruptcy in California. *Id.* Pierce filed a complaint in her bankruptcy proceeding alleging that Vickie defamed him by getting her lawyers to tell the media that he fraudulently gained control of his father's money. *Id.* He asserted that his claim was not dischargeable in her bankruptcy and later filed a proof of claim seeking to recover damages from Vickie's bankruptcy estate. *Id.* Vickie responded by filing a counterclaim for tortious interference with the gift she expected from J. Howard. *Id.* The bankruptcy judge granted Vickie judgment on her counterclaim after a bench trial, awarding her over $400 million in compensatory and $25 million in punitive damages. *Id.* Meanwhile, the Texas court conducted a jury trial on the

merits of the dispute and found in Pierce's favor. *Id.* at 2602. The district court found that Vickie's counterclaim was not core and thus treated the bankruptcy court's judgment as proposed rather than final. *Id.* After a trip to the Supreme Court and back on another issue, the court of appeals held that Vickie's counterclaim was not a core proceeding. *Id.* (citing *In re Marshall*, 600 F.3d 1037, 1059 (9th Cir. 2010)). Thus, the Texas court's judgment became the earliest final judgment on the matter requiring the district court to afford preclusive effect to the Texas court's judgment in Pierce's favor. *Id.* at 2602-03 (citing *In re Marshall*, 600 F.3d at 1064-65).

The Supreme Court again granted certiorari and held that although Vickie's counterclaim against Pierce was a core proceeding under 28 U.S.C. § 157(b)(2)(C), *id.* at 2604, Article III prohibited the bankruptcy judge from entering a final judgment on Vickie's counterclaim, *id.* at 2620. "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 2609 (quoting *N. Pipeline,* 458 U.S. at 90 (Rehnquist, J., concurring in judgment)). Congress may not withdraw "from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Id.* (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 18 How. 272, 284 (1856)). Because bankruptcy judges lack tenure and salary protections, the "defining characteristics of Article III judges," *id.*, the Court had to

decide if the bankruptcy judge improperly exercised the "judicial Power of the United States" in entering a final judgment on Vickie's counterclaim, *id.* at 2611. The claim did not involve so-called "public rights" and did not flow from a federal statutory scheme or involve a particularized area of the law. *Id.* at 2614-15. Instead, the counterclaim involved "the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Id.* at 2615.

The Court then examined whether Pierce's filing of a proof of claim gave the bankruptcy judge authority to adjudicate Vickie's counterclaim and held that because the counterclaim merely sought to augment her bankruptcy estate, Pierce's filing of a claim made no difference. *Id.* at 2615-16. The bankruptcy judge did not rule on Vickie's counterclaim as part of the process for allowing or disallowing Pierce's claim, *id.* at 2616, nor was Vickie's counterclaim "integral to the restructuring of the debtor-creditor relationship," *id.* at 2617 (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam)). Vickie's bankruptcy did not "make any difference" in characterizing her tortious interference counterclaim because state law creates and defines property interests. *Id.* at 2616 (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451 (2007)). The Court distinguished cases involving preferences in that they "in effect increase that creditor's proportionate share of the estate," and require a ruling before adjudicating the

creditor's proof of claim. *Id.* (citing *Katchen v. Landy*, 382 U.S. 323, 330 (1966)). By contrast, Vickie's counterclaim involved factual and legal determinations the bankruptcy judge did not dispose of in addressing Pierce's defamation proof of claim. *Id.* at 2617. Federal law created the right to recovery in a preference action while Vickie's counterclaim was a state tort action that existed "without regard to any bankruptcy proceeding." *Id.* at 2618.

Aurora argues that the debtors' claims are different than Vickie's counterclaim because the debtors' claims go to the heart of the bankruptcy judge's management of its Chapter 13 cases. Every court, it maintains, has authority to resolve disputes claiming that the way one party acted in the course of the court's proceedings violated another party's rights. Yet Aurora assumes that bankruptcy judges are akin to Article III judges by citing cases involving not *legislative* courts but *Article III* courts. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (holding that a district court has inherent power to vacate its own judgment); *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (holding that district courts have the inherent power to dismiss a complaint); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) (noting that federal courts have certain implied powers). The difference between those Article III courts and the bankruptcy court goes to the constitutional underpinning of *Stern v. Marshall*'s holding: "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could

confer the Government's 'judicial Power' on entities outside Article III." 131 S. Ct. at 2609. That the factual circumstances of the debtors' claims arise from bankruptcy procedures does not alter the fact that bankruptcy judges are not Article III judges. The question is whether the nature of the debtors' claims allowed Congress to withdraw them from "the bounds of federal jurisdiction." *Id.* at 2609.

Like Vickie's counterclaim, the debtors' claims involve "private parties," *id.* at 2614, disputing interests "defined by state law," *id.* at 2616 (quoting *Travelers*, 549 U.S. at 451), not historically determined by the executive or legislative branches, *id.* at 2613-14 (citing *N. Pipeline*, 458 U.S. at 68). There are no government parties involved; it is a private matter involving "the liability of one individual to another" under a Wisconsin law. *Id.* at 2612 (quoting *Crowell v. Benson*, 285 U.S. 22, 50, 51 (1932)). The debtors' claimed right to relief does not flow from a federal statutory scheme, *id.* at 2614, or address a "particularized area of the law" where "Congress devised an 'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by an administrative agency specially assigned to that task,'" *id.* at 2615 (quoting *Crowell*, 285 U.S. at 46). The debtors' claims are simply ordinary state-law claims. *See id.* at 2609.

Just as Pierce's filing of a proof of claim in Vickie's bankruptcy did not give the bankruptcy judge authority to adjudicate her counterclaim, Aurora's act of filing proofs of claim in the debtors' bankruptcies did not

give the bankruptcy judge authority to adjudicate the debtors' state-law claims. The debtors' claims seek "to augment the bankruptcy estate—the very type of claim that . . . must be decided by an Article III court." *Id.* at 2616 (citing *N. Pipeline* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)). Non-Article III judges may hear cases when the claim arises "as part of the process of allowance and disallowance of claims," *id.* (quoting *Katchen*, 382 U.S. at 336), or when the claim becomes "integral to the restructuring of the debtor-creditor relationship," *id.* at 2617 (quoting *Langenkamp*, 498 U.S. at 44). Although there is some *factual* overlap between the debtors' claims and Aurora's proofs of claim, the bankruptcy judge "was required to and did make several factual and legal determinations that were not 'disposed of in passing on objections' to" Aurora's proofs of claim. *Id.* (quoting *Katchen*, 382 U.S. at 332 n.9). In granting Aurora's summary judgment motion, the bankruptcy judge interpreted a Wisconsin state law to require proof of actual damages as an essential element of the debtors' claims and found that there was no genuine issue of material fact as to the lack of actual damages. Nothing about these decisions involved an adjudication of Aurora's proofs of claim and there is no "reason to believe that the process of adjudicating [Aurora's] proof[s] of claim would necessarily resolve" the debtors' claims. *Id. Stern* reaffirmed that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. The debtors' action owes its

existence to Wisconsin state law and will not necessarily resolve in the claims allowance process. That the circumstances giving rise to the claims involved procedures in the debtors' bankruptcies is insufficient to bypass Article III's requirements. *Stern v. Marshall* makes plain that the bankruptcy judge in our cases "exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on" the debtors' Wisconsin state-law claims. *Id.* at 2611. We thus hold that the bankruptcy judge lacked authority under Article III to enter final judgments on the disclosure claims.

The answer to the second set of questions is straightforward. The bankruptcy judge's orders cannot be considered interlocutory under 28 U.S.C. § 158(a)(3), or final decisions, judgments, orders, or decrees within the meaning of 28 U.S.C. § 158(d)(1). The orders dismissed the debtors' complaints and ended the litigation and § 158(d)(1) only gives us "jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of" § 158, which address the appellate jurisdiction of district courts and appellate panels. For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were "not a core proceeding" but are "otherwise related to a case under title 11." *Id.* As we just concluded, the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1). The direct appeal provision in 28 U.S.C. § 158(d)(2)(A) also does not authorize us to review on direct appeal a bankruptcy judge's proposed findings of fact and conclusions of law.

We did not ask for briefing on Aurora's argument that the debtors consented to the bankruptcy judge's authority by opposing Aurora's motions for the district court to withdraw its reference. Under 28 U.S.C. § 157(c)(2), a district court may, "with the consent of all the parties . . . refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under" 28 U.S.C. § 158. Aurora compares the debtors' opposition to its motions to withdraw to cases where a party's course of conduct may result in consent to a claim's resolution by a non-Article III judge. *See Roell v. Withrow*, 538 U.S. 580, 586-87 (2003) (holding that consent to a magistrate judge's authority does not require compliance with specific procedures); *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007) (same); *Heft v. Moore*, 351 F.3d 278, 281 (7th Cir. 2003) (same). Yet given the debtors' motions for abstention and remand, we cannot find an implied consent to the bankruptcy judge's authority to resolve their claims. And even if we could find an implied consent on the debtors' part, we could not find that *all* parties consented because Aurora opposed the bankruptcy judge hearing the matter in its motions to withdraw. So this case does not present any question about a bankruptcy judge's authority to enter a final judgment when the parties have consented.

\* \* \*

Given the answers to the first two questions, we cannot escape the answer to the third question of whether we had authority under 28 U.S.C. § 158(d)(2)(A), or any other

provision, to grant direct appeal. Like the bankruptcy judge in *Stern v. Marshall*, the bankruptcy judge here lacked Article III authority to enter a final judgment on the debtors' state-law claims. Without a final judgment we lack a statutory basis for appellate jurisdiction. Accordingly, we DISMISS these appeals and REMAND the cases to the bankruptcy court. Unless and until an Article III judge enters a final judgment, we have no jurisdiction to review these matters.