**FTI CONSULTING, INC., as Trustee of The Centaur, LLC Litigation Trust, Plaintiff,**

v.

**MERIT MANAGEMENT GROUP, LP, Defendant.**

**No. 11 C 7670.**

United States District Court, N.D. Illinois, Eastern Division.

July 24, 2012.

---

Gregory Scott Schwegmann, Joshua J. Bruckerhoff, Austin, TX, Marcus D. Fruchter, Jason M. Rosenthal, Chicago, IL, for Plaintiff.

Jason Jon Dejonker, Jeffrey Phillip Swatzell, Chicago, IL, for Defendant.

## ORDER

JOAN B. GOTTSCHALL, District Judge.

FTI Consulting, Inc. ("the Trustee") filed this suit against Merit Management Group, LP ("Merit") in an attempt to avoid and recover an alleged fraudulent transfer of $16,503,850 from Valley View Downs, LP ("Valley View") to Merit. In its complaint, the Trustee alleges that Valley View had plans to open a "racino," or a combination race track and casino, in Pennsylvania. To do so, Valley View needed both a racing license and a gaming license. Valley View and Bedford Downs Management Corporation ("Bedford Downs") had both applied for a racing license—in fact, they had applied for the last harness racing license available in the State of Pennsylvania—and both applications were denied by the Pennsylvania State Harness Racing Commission. Valley View then purchased Bedford Downs by transferring $55 million to its owners, which included $16,503,850 to Merit as a 30.007% owner, "essentially pa[ying] the owners of Bedford Downs $55 million to bow out of the competition." After Valley View completed the purchase, Valley View addressed some of the Racing Commission's concerns and updated its application, which resulted in the Racing Commission granting Valley View the license.

But although Valley View had a racing license, it still needed a gaming license, and that is where things fell apart. Valley View submitted an application for the gam-

ing license to the Pennsylvania Gaming Control Board, but the Control Board did not act quickly enough to prevent the "complex financing package" of loan agreements that Valley View had obtained for the racino project from expiring. Valley View never received the gaming license, and it filed for bankruptcy on October 28, 2009.

Thereafter Valley View became part of a jointly administered bankruptcy case together with Centaur, LLC ("Centaur")— Valley View's parent company—and a number of Centaur's other subsidiaries. *See In re Centaur, LLC*, No. 10–10799(KJC) (Bankr.D. Del. filed Mar. 6, 2010). The Trustee was appointed to oversee the Centaur, LLC Litigation Trust (the "Trust"), which was formed pursuant to a confirmed plan of reorganization (the "Confirmed Plan") in the bankruptcy case. The Trustee alleges that under the Confirmed Plan, the debtors transferred all of their rights and interests in certain "Designated Avoidance Actions" to the Trust, including the claims asserted in this case. The Trustee seeks to avoid the transfer of $16,503,850 to Merit by arguing that at the time of the transfer, Valley View was insolvent and Bedford Downs had no revenue or assets of any worth. In Count I of its two-count complaint, the Trustee seeks to avoid the transfer under 11 U.S.C. § 548(a)(1)(B) and to recover the funds pursuant to 11 U.S.C. § 550; in Count II, it seeks to avoid and recover the alleged fraudulent transfer under Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. Cons.Stat. Ann. §§ 5105 & 5107, and Sections 544 and 550 of the Bankruptcy Code, 11 U.S.C. §§ 544(b) & 550.

Merit moved to dismiss, arguing that this court lacks subject matter jurisdiction because the Trustee has no standing to sue. Shortly after Merit filed that motion, the Trustee filed its own motion, request-ing that this court refer the case to the Bankruptcy Court of the Northern District of Illinois pursuant to Local Rule 40.3.1(a). Both motions are opposed.

The court turns first to the Trustee's motion to refer the case to the bankruptcy court. Although federal district courts have original jurisdiction over all bankruptcy proceedings arising out of Title 11 of the Bankruptcy Code, *see* 28 U.S.C. § 1334, a district court may refer certain "core" cases to a bankruptcy court for final judgment under 28 U.S.C. § 157(a)-(b)(1). In the Northern District of Illinois, these cases are referred to the bankruptcy court "[a]s a matter of course." *See In re Neumann Homes, Inc.*, 414 B.R. 383, 385–86 (N.D.Ill.2009) (citing L.R. 40.3.1); *In re Hedstrom Corp.*, Nos. 04–38543 & 05 C 6888, 2006 WL 1120572, at *1 (N.D.Ill. Apr. 24, 2006) (same). There is no debate that this case is a "core" proceeding under Title 11 and, as such, this court would generally refer the matter to the bankruptcy court for final judgment. *See* 28 U.S.C. § 157(b)(2)(H) (describing core proceedings, including those that "determine, avoid, or recover fraudulent conveyances"); L.R. 40.3.1 ("Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 U.S.C. and all proceedings arising under Title 11 U.S.C. or arising in or related to any cases under Title 11 U.S.C. are referred to the bankruptcy judges of this District.").

But although Title 11 purports to give bankruptcy courts the authority to enter final judgment in such cases, the Supreme Court recently made clear the constitutional limits on that authority. In *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2601, 180 L.Ed.2d 475 (2011), a bankruptcy court had entered a final judgment on a tortious interference counterclaim, which was a "core" bankruptcy proceeding. The Supreme Court concluded that although the bankruptcy court had the statutory

authority to enter the final judgment, "it lacked the constitutional authority to do so." The Supreme Court came to this conclusion after drawing a distinction between "public" and "private" rights, where public rights are those rights "integrally related to particular federal government action." *Stern*, 131 S.Ct. at 2613. Under the "public rights exception," Congress may constitutionally assign certain cases to non-Article-III courts. *Id.* at 2610; *see also id.* at 2598 (noting that the exception is limited "to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority."). In the *Stern* case itself, the Court held that the exception was inapplicable, because the counterclaim at issue was "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611.

■ Although the *Stern* Court stated that the question before it was a "narrow" one, *see id.* at 2620, the lower courts have come to different conclusions about the impact of *Stern*. Some basically limit the opinion to its facts. *See, e.g., In re DeLaFuente*, No. 10–25220, 2012 WL 1535848, at *3 (Bankr.D.Colo. Apr. 30, 2012); *In re Prince*, No. 09–43627, 2012 WL 1095506, at *4–5 (Bankr.E.D.Tex. Mar. 30, 2012). Other courts hold that *Stern* has limited a bankruptcy court's ability to enter final judgment on other "core" proceedings as well. *See, e.g., In re Southeastern Materials, Inc.*, 467 B.R. 337, 364–65 (Bankr. M.D.N.C.2012) (collecting cases). This court agrees with the latter view.

*Stern* relied in part on the Supreme Court's earlier opinion in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 50, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). *Granfinanciera* is not directly on point: there, the Court determined whether an entity who had not submitted a claim against a bankruptcy estate had a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer.[1] Still, the reasoning set out in that case is applicable here. Notably, in discussing fraudulent transfers, the Court stated that "a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 55, 109 S.Ct. 2782; *see id.* at 55–56, 109 S.Ct. 2782 ("If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court.... There can be little doubt that fraudulent conveyance actions by bankruptcy trustees ... are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.") (internal quotation marks and citation omitted).

Given that the Court's reasoning in *Stern* was based upon the public/private right distinction, and given that *Granfinanciera* explicitly found that fraudulent transfer actions are "private rights," *Stern*

---

1. In fact, the Court expressly refrained from deciding whether a bankruptcy court could conduct the jury trial under the statutory scheme, and whether—even if Congress allowed it—such an authorization would violate Article III. *See Granfinanciera,* 492 U.S. at 50, 109 S.Ct. 2782.

instructs that a bankruptcy court does not have the constitutional authority to enter a final judgment on a fraudulent transfer claim.[2] *Accord In re Canopy Fin., Inc.,* 464 B.R. 770, 773 (N.D.Ill.2011) ("[T]he *Stern* Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on [fraudulent conveyance claims].")*; In re Lyondell Chemical Co.,* 467 B.R. 712, 720 (S.D.N.Y.2012) ("Unlike the claim in *Stern,* so the argument goes, fraudulent conveyance claims 'flow from a federal statutory scheme'.... This argument runs directly contrary to the clear language of *Stern.*")*; In re Heller Ehrman LLP,* 464 B.R. 348, 354 (N.D.Cal.2011)*; see also In re USA Baby, Inc.,* 674 F.3d 882, 883–84 (7th Cir.2012) (describing *Stern* as holding that "bankruptcy judges may not enter final judgments on common law claims that are independent of federal bankruptcy law")*; In re Ortiz,* 665 F.3d 906, 914 (7th Cir.2011).

■ So the bankruptcy court cannot enter a final judgment on the Trustee's claims. This does not mean, however, that this court should not refer the case to the bankruptcy court: the bankruptcy court still may enter proposed findings of fact and conclusions of law. Indeed, "[i]t is clear that Bankruptcy Court can enter such orders," even in core proceedings. *See In re Lyondell Chemical Co.,* 467 B.R. at 724*; In re Miller,* 467 B.R. 677 (Bankr. D.Mass. Mar. 30, 2012) ("If a bankruptcy court may not enter final judgment in a proceeding to avoid or recover a fraudulent transfer, it may nonetheless hear the

matter and enter proposed findings and conclusions, subject to review and entry of final judgment in the district court, essentially as a noncore matter that falls within the scope of 28 U.S.C. § 157(c)(1).").

■ Merit protests, arguing that to refer the case to the bankruptcy court would be to sanction the Trustee's forum shopping, and that the Trustee should have filed suit in the Delaware bankruptcy court. But Merit has not argued that venue is improper in this district, nor did Merit file a motion seeking transfer under 28 U.S.C. §§ 1404 or 1406. Merit also argues that because the Trustee lacks standing, this court lacks subject matter jurisdiction to do anything but dismiss the case with prejudice. But "[a] court always has jurisdiction to determine jurisdiction." *Bunting v. Mellen,* 541 U.S. 1019, 1026, 124 S.Ct. 1750, 158 L.Ed.2d 636 (2004) (Scalia, J., dissenting) (citing *United States v. Mine Workers,* 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). And clearly the bankruptcy court has subject matter jurisdiction over core proceedings, even if it lacks constitutional authority to enter a final judgment. *See Stern,* 131 S.Ct. at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction.") (citations omitted).

■ This court would certainly benefit from the bankruptcy court's expertise in analyzing fraudulent transfer claims such

2. The Ninth Circuit recently invited *amici curiae* to submit their views on whether *Stern* prohibits bankruptcy courts from entering a final judgment on an action to avoid a fraudulent conveyance. *See In re Bellingham Ins. Agency, Inc.,* 661 F.3d 476, 477 (9th Cir. 2011). In response, the Department of Justice argued that *Stern* and *Granfinanciera* "establish[ ] that Article III bars bankruptcy courts from entering final judgment in a fraudulent conveyance action brought against a noncreditor in the bankruptcy proceedings, absent the parties' consent to bankruptcy court adjudication." Br. for United States as Amicus Curiae at 13–14, *In re Bellingham Ins. Agency, Inc.,* No. 11–35162 (9th Cir. Jan. 19, 2012).

as those at issue here. For the reasons stated above, the Trustee's motion to refer the case to the bankruptcy court is granted, and Merit's motion to dismiss is referred to the bankruptcy court for proposed findings of fact and conclusions of law.

