In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-2278

MICHAEL CATINELLA,

*Plaintiff-Appellant*,

*v.*

COUNTY OF COOK, ILLINOIS, and
COOK COUNTY DEPARTMENT
OF TRANSPORTATION AND HIGHWAYS,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15 C 1400 — **Elaine E. Bucklo**, *Judge*.

———————————

ARGUED MAY 18, 2017 — DECIDED JANUARY 31, 2018

———————————

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Michael Catinella sued Cook County and its Department of Transportation for firing him under false pretenses in violation of his rights under the Due Process Clause, the Equal Protection Clause, and federal statutory provisions. The circumstances surrounding this event are filled with intrigue. The complaint describes a

public-bidding process gone awry, an investigation to cover it up, coworkers who were jealous of Catinella's promotion, a confiscated knife, false reports to police that Catinella threatened to "shoot up the workplace," and an arrest on a charge of disorderly conduct—all leading up to the abrupt termination of his employment with the County. What the complaint does not show, however, is how this whirlwind of alleged unfairness violates any federal constitutional or statutory provision. After giving Catinella two chances to plead a plausible claim for relief, the district judge dismissed the case with prejudice.

We affirm. To survive a motion to dismiss, a complaint must include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Catinella certainly spins an elaborate story, but it doesn't cohere around any plausible constitutional or statutory violation. The judge was right to dismiss the case.

## I. Background

The amended complaint is the operative pleading, so we take the following factual account from that document. The picture it paints is disjointed and murky at best. We add the usual caution that these are just allegations.

Catinella worked for the Cook County Department of Transportation and Highways from January 1994 to March 2013. He was well regarded by his peers and supervisors—so much so that in 2009 the Department promoted him from machinist to a supervisory position. Before January 2013 Catinella was never disciplined.

In August 2012 Cook County conducted a round of bidding to award a fuel-pump contract. After bidding closed and the winner was announced, a losing bidder complained and tried to make a second bid. The complaint does not provide any additional information about the fuel-pump contract, the bidding process, the reason for the losing bidder's complaint, or how Catinella fits into the story. All it tells us is that in mid-August investigators from the Office of the Independent Inspector General met with Catinella and his attorney regarding an investigation into the bidding process. Investigators asked Catinella to sign two documents relating to the probe but he refused. They warned Catinella that he could lose his job if he did not sign the documents, but he again refused. The complaint does not describe the contents of the documents or provide any further details about the investigation.

In the middle of this interview, investigators suddenly asked Catinella if he was carrying a weapon. Catinella admitted that he had a small knife that he used in his work as a machinist. At the investigators' request, Catinella handed the knife over to his lawyer. The investigators did not confiscate it, nor was Catinella subject to further inquiry or discipline at that time.

Nothing untoward happened for the next four months. Then on January 24, 2013, five of Catinella's coworkers filed a grievance complaining that Catinella was getting extra work privileges: a car, a cell phone, significant overtime, and a higher-rated position for longer than 180 days. Although five employees joined the complaint, only one of them actually signed the grievance.

On February 2 Catinella was told that he was being placed on emergency leave with pay pending an investigation. Two days later he received a letter informing him that he was placed on emergency suspension as a result of unspecified "major causes" under the Cook County personnel rules.

Around this same time, an investigator with the Cook County Bureau of Administration alerted the Cook County Sheriff's Department that Catinella may be a threat to the workplace. On February 5 the investigator brought four witnesses to the department to give statements regarding an alleged threat by Catinella to "shoot up the workplace." The witnesses gave inconsistent accounts about what happened. Some of their stories were based on third-party accounts, and some were not even physically present at the location where Catinella worked and couldn't have witnessed any alleged threat. Another employee, Gary Roden, contradicted the statements of the four witnesses; Roden stated that he had "never seen [Catinella] make any alleged threat at all relevant times." The Sheriff's Department contacted Catinella and asked him to turn himself in. He complied the following day and was charged with disorderly conduct and released on bond.

On February 8 the Inspector General's Office issued a summary report finding that Catinella possessed a weapon while at work in violation of Cook County personnel rules and the Illinois Criminal Code. Catinella's complaint vaguely alleges that the report was procedurally irregular. He alleges that Cook County rules and procedures require a hearing and any disciplinary action within 30 days of an

alleged infraction. The knife incident occurred approximately six months earlier.

On February 22 the Department of Transportation notified Catinella that a prediscipinary meeting would be held on February 28. At the meeting Catinella was not allowed to confront any complaining witnesses; the Inspector General's Office did not produce the knife or any other physical evidence; Catinella was not allowed to question any of the investigators; and he did not have legal representation. On March 5, 2013, Cook County fired Catinella for possessing a weapon and making a threat of violence in the workplace.

Two days later the Inspector General's Office interviewed another employee on suspicion of possessing a knife for work purposes. A knife was confiscated, but the employee never faced a disciplinary hearing or suffered disciplinary action for possessing it.

At the end of March, Catinella filed a grievance alleging that he was fired without justification. The grievance was denied three times. (The redundancy is not explained.) On October 4 the disorderly conduct charge was dropped when the complaining witnesses did not appear.

In early 2015 Catinella filed suit against Cook County and its Department of Transportation under 42 U.S.C. § 1983 alleging violations of procedural and substantive due process. He also alleged a confusing race-based retaliation claim under 42 U.S.C §§ 1981 and 1983, the latter apparently based on an equal-protection theory. The defendants moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. The judge granted the motion and dismissed the

complaint, but she gave Catinella an opportunity to amend it.

In due course, Catinella tried again. The defendants moved to dismiss the amended complaint for again failing to state any plausible claim for relief. The judge granted the motion and dismissed the case with prejudice. Catinella appealed.

## II. Discussion

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At a minimum the complaint "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. "'[L]egal conclusions can provide the framework of a complaint' so long as they are 'supported by factual allegations.'" *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). We review the judge's dismissal order de novo. *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014).

Catinella alleges that Cook County and its Department of Transportation deprived him of property without due process of law, violated his right to substantive due process, and retaliated against him in violation of §§ 1981 and 1983. His complaint does not, however, plausibly allege a factual basis for any of these claimed constitutional or statutory violations.

### A. Procedural Due Process

The Fourteenth Amendment forbids state and local governments from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Catinella's due-process claim rests on an alleged deprivation of a property—i.e., his job. To state a due-process claim of this type, the complaint must plausibly allege that the plaintiff was deprived of a cognizable property interest. *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017).

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Under Illinois law a public employee has a protected property interest in his job only if continued employment is guaranteed by "a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (quotation marks omitted). Qualifying limits on the government's ability to discharge must be substantive; mere procedural rights do not create a protected property interest in continued employment. *Id.* at 701; *see also Heck v. City of Freeport*, 985 F.2d 305, 311 (7th Cir. 1993) ("[M]ere procedural rights … do not of themselves give rise to property interests protected under the Fourteenth Amendment."). This is where Catinella's due-process claim falls short.

Catinella has not identified any state law, local ordinance, or contract provision that substantively limits Cook

County's ability to fire him. He relies solely on his personal "understanding" that "pursuant to Cook County policies and procedures," he "could not be terminated from his employment *unless* [*certain*] *steps were followed*, which in his case were not." (Emphasis added.) At best, that's an allegation about process, not a property right. "Process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). An employee manual or policy handbook that specifies a set of pre-termination procedures does not "create an enforceable property right to a job." *Moss*, 473 F.3d at 701. Catinella has not stated a plausible claim for deprivation of a property interest in his employment.

## B. Substantive Due Process

The complaint also purports to raise a claim for violation of substantive due process. The Supreme Court has repeatedly cautioned against expanding the contours of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]e have 'always been reluctant to expand the concept of substantive due process' … ." (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992))). As relevant here, the Court has limited the reach of the substantive component of the due-process guarantee to cases involving abuse of governmental power so arbitrary and oppressive that it shocks the conscience. *Id.* at 846–47. "[O]nly the most egregious official conduct" can be said to violate this standard. *Id.* at 846.

For example, the Supreme Court's lodestar case recognizing a conscious-shocking due-process violation involved the forcible pumping of a criminal suspect's stomach. *Rochin v. California*, 342 U.S. 165, 172–73 (1952). The Court described the violation in the following way:

> Illegally breaking into the privacy of the peti-
> tioner, the struggle to open his mouth and re-
> move what was there, the forcible extraction of
> his stomach's contents—this course of proceed-
> ing by agents of government to obtain evi-
> dence is bound to offend even hardened sensi-
> bilities. They are methods too close to the rack
> and the screw to permit of constitutional dif-
> ferentiation.

*Id.* at 172.

Assuming every possible inference in his favor, the story recited in Catinella's complaint is miles away from "the rack and the screw." In short, he claims that Cook County retaliated against him because he refused to cooperate in an investigation into public bidding and then trumped up his nonthreatening possession of a knife as a pretext to fire him. Even if unfair, this conduct is far from conscience shocking. The complaint does not plausibly plead a violation of substantive due process.

## C. Retaliation

Lastly, the complaint alleges a set of claims based on race-based retaliation. Catinella is white. He first invokes § 1981 of the Civil Rights Act of 1866, which provides:

> All persons within the jurisdiction of the
> United States shall have the same right in eve-
> ry State and Territory to make and enforce con-
> tracts, to sue, be parties, give evidence, and to
> the full and equal benefit of all laws and pro-
> ceedings for the security of persons and prop-
> erty as is enjoyed by white citizens, and shall

> be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The Supreme Court has interpreted this language to confer a cause of action on a person who suffers retaliation "because he … tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008). Catinella tacks on a retaliation claim under § 1983, alleging that the defendants committed the retaliatory acts "under color of state law" and in violation of his right to equal protection.

The defect in the first claim is that the complaint does not allege that Catinella was fired in retaliation for helping a person who suffered direct racial discrimination secure rights guaranteed under § 1981. In fact, the complaint and Catinella's briefs contain *no* allegations of race-based discrimination *at all*. The closest he comes is a single sentence in his opening brief: "[P]laintiff being a Caucasian male Cook County employee … was subject to reverse retaliation as demonstrated by the facts set forth throughout the First Amended Complaint."

The complaint tells a different story. There Catinella alleges that his discharge was "politically motivated and in retaliation for [p]laintiff's position." He does not allege that the County retaliated against him for assisting a victim of racial discrimination. Nor does he allege any "background circumstances sufficient to demonstrate that [Cook County] ha[d] reason or inclination to discriminate invidiously against whites." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816,

820 (7th Cir. 2006) (internal quotation marks omitted). Simply put, the complaint contains no factual content that even hints at a *race*-based retaliation claim under *either* §§ 1981 or 1983.[1]

As a fallback argument, Catinella asks us to remand to give him one more chance to amend his complaint. We think that's a fool's errand. The district judge declined to allow a third try. We will reverse that exercise of discretion "only if no reasonable person could agree." *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (quotation marks omitted). Catinella has given us no reason to question the judge's view that a third version of this complaint would not remedy the defects in the first two.

AFFIRMED.

---

[1] Catinella might have tried to cobble together a cohesive set of factual allegations to state a plausible § 1983 equal-protection claim on some nonracial theory. But he didn't.