In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-1898

DANIEL JACKSON,

*Plaintiff-Appellee,*

*v.*

SHAWN CURRY, et al.,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 16-cv-1054 — **Sara Darrow**, *Judge.*

_____

ARGUED DECEMBER 7, 2017 — DECIDED APRIL 19, 2018

_____

Before BAUER, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Daniel Jackson spent time in custody on a wrongful murder conviction. He sued Shawn Curry and Keith McDaniel, the police officers who interrogated him, for coercing his confession. The officers moved for dismissal on qualified immunity. The district court denied that motion, and the officers appeal. Lacking jurisdiction, we dismiss this appeal.

## I. Background[1]

On the night of August 29, 2009, Clifford Harvey, Jr., and Easton Eibeck walked through Peoria, Illinois. Eibeck was high. Four men confronted Harvey and Eibeck. When one of the four reached for his waistband, Harvey and Eibeck ran. Eibeck heard a gunshot and kept running. The shooter killed Harvey. At the scene, police found the body, bullet fragment, and a screwdriver, but no weapon, shell casing, or eyewitness. Eibeck could generally describe, but not positively identify, the shooter to Curry the next day.

About six months later, Curry conducted a photo line-up and Eibeck identified Jackson. This led to Jackson's warrantless arrest. He had consumed alcohol and drugs before his arrest. Curry and McDaniel interrogated Jackson for about two hours, on video. Jackson was high and woozy during the interrogation. He said he was not at the shooting.

McDaniel, who is black, told Jackson if he remained silent he would still be charged with murder. McDaniel told Jackson he would not receive a fair trial because he is a young black man, and the biased jury would convict him based on prejudice regardless of the facts. The officers allegedly lied about the evidence, falsely claiming multiple witnesses identified Jackson as the shooter. The officers suggested Harvey threatened Jackson with a screwdriver and he shot in self-defense. The officers fed Jackson details and allegedly pressured him to make false inculpatory statements. During

---

[1] We draw the facts from Jackson's complaint. *See generally Veseley v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). As this case comes to us at the pleadings stage, we "add the usual caution that these are just allegations." *Catinella v. Cty. of Cook, Ill.*, 881 F.3d 514, 516 (7th Cir. 2018).

the interrogation, Jackson showed signs of intoxication and diminished capacity, including slurred speech and uncoordinated movements. About two hours and fifteen minutes after the interrogation began, Jackson collapsed and fell to the floor. He did not respond to initial revival efforts. Jackson told responding paramedics he felt dizzy and his head had hurt for a couple hours. He went to the hospital.

Jackson stood trial. The State presented Eibeck's identification of Jackson and video excerpts of Jackson's interrogation. The jury convicted him of first-degree murder, and the judge sentenced him to 65 years in prison.

But Jackson claims he had nothing to do with the murder. The Illinois Appellate Court reversed the conviction, concluding the police lacked probable cause to arrest Jackson. *People v. Jackson*, 22 N.E.3d 526, 542 (Ill. App. Ct. 2014).

Jackson sued various Defendants for constitutional violations. All Defendants moved to dismiss. The only claim at issue here is Count II, which claims the officers coerced a confession in violation of the Fifth Amendment. The officers moved for dismissal of Count II based on qualified immunity. The district court denied that motion. The officers appeal.

## II. Discussion

The threshold issue is whether we have jurisdiction. *See In re Ortiz*, 665 F.3d 906, 909 (7th Cir. 2011). We have jurisdiction over appeals from "final decisions" of district courts. 28 U.S.C. § 1291. A denial of a motion to dismiss is generally not immediately appealable because it is not final. *See United States v. Michelle's Lounge*, 39 F.3d 684, 702 (7th Cir. 1994), *abrogated on other grounds by Kaley v. United States*, 134 S.Ct. 1090, 1095 n.4 (2014).

But the collateral-order doctrine provides a limited exception. An interlocutory order is immediately appealable if it "(1) [is] conclusive on the issue presented; (2) resolve[s] an important question separate from the merits of the underlying action; and (3) [is] effectively unreviewable on an appeal from the final judgment of the underlying action." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016) (internal quotation marks omitted). The collateral-order doctrine permits an immediate appeal of the denial of qualified immunity at the pleadings stage because "qualified immunity is immunity from suit rather than a mere defense to liability, and is effectively lost if a case is erroneously permitted to go to trial." *Armstrong v. Daily*, 786 F.3d 529, 537 (7th Cir. 2015) (internal quotation marks and emphasis omitted). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is both a liability defense and a limited "entitlement not to stand trial or face the other burdens of litigation … ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

But the exception providing jurisdiction over denials of qualified immunity is limited to pure legal questions. *Hurt v. Wise*, 880 F.3d 831, 839 (7th Cir. 2018). We only have jurisdiction when "the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (internal quotation marks omitted). Thus, defendants cannot immediately appeal factual determinations regarding qualified immunity. *Id.* at 307. "The appeal is limited in scope

for the same reason it is permitted: the question of qualified immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Armstrong*, 786 F.3d at 537 (internal quotation marks omitted).

At this stage, the qualified-immunity defense only presents two legal questions: "first, whether plaintiff has alleged a violation of his constitutional rights, and second, whether the violation was clearly established in the law at the time of the defendant's conduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). If the district court's order denying qualified immunity turns on a pure legal issue, then it (1) conclusively determines defendant must bear the burdens of discovery; (2) is conceptually distinct from the merits of plaintiff's claim; and (3) would prove effectively unreviewable on appeal from a final judgment. *Mitchell*, 472 U.S. at 527–30. Such an order is a "final decision" within the meaning of § 1291. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). In other words, if the officers accept the facts and reasonable inferences favorable to Jackson for purposes of the qualified-immunity inquiry at this stage, and argue those facts and inferences do not establish a violation of a clearly established constitutional right, then we have jurisdiction to entertain that argument. *Hurt*, 880 F.3d at 839.

So we must decide whether the appeal raises any pure legal questions regarding the denial of qualified immunity. The officers raise three broad issues on appeal. First, they claim the district court erred by declining to review the video, which they claim shows Jackson did not manifest intoxication or unique susceptibility and the officers did not use any clearly unconstitutional tactics. Second, they claim the district court erred by applying a highly generalized formulation of

the law to McDaniel's comments regarding race, and they argue these comments did not clearly violate the Constitution. Third, they claim the state court's admission of the confession into evidence at trial was a superseding cause entitling the officers to qualified immunity. We address whether we have jurisdiction over each issue in turn.

*A. Video*

The district court declined to review the interrogation video to make factual determinations about the officers' alleged intimidation tactics and Jackson's demeanor. Instead, the district court did what district courts normally should do at this stage: it accepted all well-pleaded factual allegations in the complaint as true, drew all reasonable inferences in favor of Plaintiff, and determined whether the claims plausibly suggest entitlement to relief. Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

We lack jurisdiction to review the district court's decision not to watch the video at the pleadings stage. That decision itself does not involve a pure legal issue regarding qualified immunity, i.e., whether the officers violated Jackson's clearly established constitutional rights.

Moreover, the further-removed issues about what the video shows are fact issues. The officers claim the video shows Jackson did not manifest intoxication or unique susceptibility. But this is a fact issue over which we lack jurisdiction, and an issue the video cannot conclusively resolve anyway. The video is bound to be subject to varying interpretations about how Jackson presented, and cannot

conclusively establish or eliminate all indicia of impairment customarily relied on by officers, such as any odors emanating from Jackson or the details of his eyes. The officers argue the controlling question is: in light of the claim and video, are there any salient facts to be developed by additional litigation? The answer is yes.

The officers also claim the video shows they did not use any single tactic, or combination of tactics, that were clearly unconstitutional. But again, the video is bound to be subject to varying interpretations. Besides, the district court did *not* conclude that any single tactic in a vacuum, or even any combination of tactics in a bigger vacuum, were plausibly clearly unconstitutional. Rather, as required by qualified-immunity jurisprudence and the Fifth Amendment, the district court properly considered the totality of the circumstances, with deference appropriate at this stage, and concluded the officers plausibly violated clearly established rights. The video cannot show the totality of the circumstances, and it cannot resolve all fact questions.

The officers argue the principle mandating the earliest feasible resolution of qualified immunity plus the admonition to view facts "in the light depicted by the videotape," *Scott v. Harris*, 550 U.S. 373, 381 (2007), required the district court to review the video before rejecting qualified immunity. But the video here is distinguishable from that in *Scott*, where the video "quite clearly contradict[ed]" respondent's story. *Scott*, 550 U.S. at 378. *Scott* involved a high-speed car chase that ended when an officer's vehicle pushed respondent's vehicle off the road. Respondent claimed that during the chase he remained in control of his vehicle, and posed little, if any, actual threat. The Eleventh Circuit adopted respondent's

view. Its description of the chase gave "the impression that respondent, rather than fleeing from police, was attempting to pass his driving test … ." *Scott*, 550 U.S. at 378–79. But the Supreme Court recognized "[t]he videotape tells quite a different story." *Id.* at 379. The video definitively contradicted the essence and essential details of respondent's account.

But here, the officers do not claim the video completely belies Jackson's claims. *See Hurt*, 880 F.3d at 840 ("The video evidence of [the] interrogations does not portray the kind of uncontestable facts that were before the Court in *Scott*."). Rather, the officers claim their interpretation of the video contradicts Jackson's claims: "Indeed, what Plaintiff describes as factual disputes about the interrogation are, in view of the videotape, actually mere differences in the parties' characterizations of the same evidence." (Appellants' Reply Br. at 8.) The officers want to spin the facts shown by the video. And they do not account for the fact that the video does not show everything. It does not show everything the officers knew or should have known about Jackson. As noted, it does not convey smell or show ocular details. It does not show what the officers knew when they brought Jackson in. And what it does show is open to interpretation. After all, "differences in the parties' characterizations of the same evidence" are the essence of fact disputes, over which we presently lack jurisdiction.

We lack jurisdiction to review the district court's decision not to watch the video at this stage because that decision does not fit within the narrow exception to the general rule that only final orders are appealable.

*B. Comments regarding jury bias*

The officers claim the district court erred by applying a highly generalized formulation of the law to the comments regarding race, and they argue these comments did not clearly violate the Constitution. They argue the right to be free from a psychologically intimidating interrogation or from the tactic of exaggerating the consequences of not confessing are highly generalized formulations that cannot defeat qualified immunity. They maintain there is no case law barring McDaniel from giving his "view of an unfortunate reality check on the inherent injustices of the criminal justice system." (Appellants' Br. at 27.) They argue there was no closely analogous, particularized precedent placing the unconstitutionality of the statements beyond debate. The issue of whether these comments violated a constitutional right clearly established by particularized precedent *seems* like a pure legal question regarding qualified immunity, susceptible to our jurisdiction.

The problem for the officers, however, is the district court did not do what they say it did. The district court did not conclude the comments regarding race, in isolation, violated a clearly established constitutional right. Rather, the district court concluded these comments, combined with all the alleged circumstances, including Jackson's impairment and susceptibility, plausibly violated clearly established rights, thereby defeating qualified immunity, at least for now.

The Fifth Amendment protects people from coerced confessions: "No person … shall be compelled in any criminal case to be a witness against himself … ." U.S. Const. amend. V. The Fourteenth Amendment makes the Fifth Amendment's Self-Incrimination Clause applicable against

the States. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The government violates the Self-Incrimination Clause by using coerced confessions at pre-trial hearings or trials in criminal cases. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (trial); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026–27 (7th Cir. 2006) (pre-trial hearings). The evaluation of whether a confession is coerced involves consideration of the totality of the circumstances to determine whether the suspect confessed voluntarily, of his own free will, or whether the police overrode his volition. "The voluntariness of a confession depends on the totality of circumstances, including both the characteristics of the accused and the nature of the interrogation. If those circumstances reveal that the interrogated person's will was overborne, admitting the resulting confession violates the Fifth Amendment." *Hurt*, 880 F.3d at 845 (internal citation omitted).

Contrary to the officers' assertions, the district court did not conclude the race comments, in isolation, plausibly violated Jackson's clearly established rights. Instead, the district court considered the totality of the circumstances alleged: Jackson was under the influence of alcohol and drugs, and was unwell. He repeatedly told the officers he was not at the shooting. They refused his requests to call his family, ignored his attempt to invoke *Miranda*, and employed lies, psychological intimidation, and false promises of lenience. He was particularly susceptible to these tactics, and his condition was so bad he collapsed, fell out of his chair, and did not respond initially to revival efforts. At the time of the interrogation, it was well established that someone under the influence of alcohol or drugs might be especially susceptible to coercion. *See United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). In the context of the totality of these circumstances,

McDaniel allegedly delivered a long soliloquy in which he exaggerated the consequences of not confessing and told Jackson the jury would be prejudiced against him and would convict him because he is a young black man, regardless of the facts. The district court considered all these circumstances.

In sum, the district court did not conclude McDaniel's comments regarding race, in a vacuum, violated a clearly established right, but rather considered the totality of the alleged circumstances. So even if in a vacuum the race comments do not violate such a right, the district court committed no error because it did not hold they did. As the district court made no conclusion here raising a pure legal issue regarding qualified immunity, we lack jurisdiction.

*C. Superseding cause*

The officers argue admitting the confession into evidence at trial was a superseding cause entitling them to qualified immunity. But, as the officers admit, we have not accepted this argument in the context of a Fifth Amendment coerced-confession claim. We presently lack jurisdiction over the superseding-cause issue as it is not a pure legal question related to qualified immunity.

### III. Conclusion

We lack jurisdiction regarding the decision not to watch the video at the pleadings stage, and regarding fact issues about what the video shows. We lack jurisdiction regarding the race comments because the officers do not appeal any pure legal issue regarding a conclusion actually reached by the district court about these comments. We lack jurisdiction regarding the superseding-cause issue because it is not a pure legal question related to qualified immunity.

Lacking jurisdiction, we DISMISS the appeal.