In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3126

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JON GILES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 00112-1 — **Ronald A. Guzmán**, *Judge.*

ARGUED MAY 28, 2019 — DECIDED AUGUST 15, 2019

Before WOOD, *Chief Judge,* and BAUER and EASTERBROOK,
*Circuit Judges.*

BAUER, *Circuit Judge.* After Jon Giles's DNA was found at
the scene of the robbery of North Community Bank, FBI agents
interrogated him at the Pontiac Correctional Center where he
was serving a prison term for two other bank robberies. Giles
confessed to the robbery. Giles argues the district court erred

in denying his motion to suppress the confession, because his prolonged solitary confinement prior to the interview rendered him incapable of exercising a voluntary and knowing waiver of his Fifth Amendment rights. Giles also argues that the district court failed to properly address his mitigating arguments at sentencing. For the reasons that follow, we reject these arguments and affirm the orders of the district court.

## I. BACKGROUND

In 2010, Jon Giles pleaded guilty to state robbery charges. Giles spent the next two years in solitary confinement at Tamms Correctional Center. When Tamms was shuttered, Giles was transferred to Pontiac Correctional Center. He spent one month in general population before returning to isolation from January 2013 until January 2014.

On August 30, 2013, during this period of solitary confinement, FBI agents Timothy Bacha and Michael Lovernick questioned Jon Giles. They were investigating a bank robbery at North Community Bank that took place in 2009. DNA recovered from a glove found near the crime scene matched Giles's DNA. The glove was found next to dye-stained money stolen from the bank.

At first, Giles refused to meet with the agents. Robin Lopeman, a Pontiac correctional officer, approached Giles's cell with Bacha's business card. Giles requested that she show the card to Robert Hall, a fellow inmate and former gang associate, following a "home-grown" prison custom of letting other inmates know where you are going and who you are talking to. Hall shouted his consent and Giles agreed to speak to the agents.

Bacha and Lovernick read Giles his *Miranda* rights, and he agreed in writing to be questioned without an attorney present. Giles initially denied his involvement in the North Community Bank robbery until he was shown the DNA report and photographs of the dyed money. Giles then confessed to the robbery and agreed to a cheek swab after being advised of his right to refuse. The swab matched the DNA found on the glove.

Giles was indicted on March 4, 2014, on one count of bank robbery under 18 U.S.C. § 2113 and one count of using a firearm in relation to a crime of violence under 18 U.S.C. § 924(c). He moved to suppress the confession, arguing that neither his *Miranda* waiver nor his confession were made voluntarily. In support of this claim, Giles cited his long-term confinement in a "small windowless cell" which provided little opportunity for human interaction. Giles said his mental state was "precarious" and that he had experienced symptoms of "acute anxiety attacks, insomnia … uncontrollable rage" and "hallucinations."

At an evidentiary hearing, Giles called psychiatrist Dr. Silberberg who testified that he conducted a forensic psychiatric evaluation of Giles on November 4, 2014, and had reviewed administrative and medical records. Dr. Silberberg stated that prolonged isolation could result in impaired memory, attention, and concentration. Isolation could also affect the ability to make rational decisions, and cause mood disorders. He testified that the effects could be temporary, and that a person might be competent at one point in time but not another. Dr. Silberberg recited Giles's medical history, which included treatment for psychological disorders and repeated head trauma, and concluded that Giles would be particularly

vulnerable to the effects of isolation. He concluded that Giles did not appreciate the significance of the *Miranda* warning and that his confession was not voluntary.

 Lopeman described Giles's initial refusal to speak with the FBI agents; and how she showed Hall Bacha's business card as Giles requested. Hall testified that he knew Giles for 17 years, that both were members of the Four Corner Hustlers gang, and corroborated Lopeman's testimony regarding Bacha's business card. He said he spoke to Giles regularly, and had no difficulty communicating with him.

Bacha corroborated the statements of Lopeman and Hall. He testified that Giles read a form informing him of his *Miranda* rights, recited the consent portion back to Bacha without any difficulty, and then signed the form agreeing to be interviewed without an attorney present. Giles denied involvement with the robbery until being shown the DNA evidence; Giles then described the robbery, providing details such as the gender of the teller he robbed and details about his getaway.

When Bacha asked whether Giles had information about any other criminal activity, Giles indicated that he could provide information about money and drugs in exchange for a lenient sentence. When asked whether he had information about any murders, Giles stated that if the agents wanted to "talk about bodies" that he would have to think about it. Giles then signed a consent form and gave a sample of his DNA. Bacha testified that Giles showed no signs of mental distress, did not appear disoriented, and appeared to be rational.

The district court denied the motion to suppress, finding Dr. Silberberg's conclusions about Giles's mental state on the

date of the interrogation and confession to be unsupported. The district court gave great weight to the testimony of Lopeman, Hall, and Bacha, all of whom were present on August 30, 2013. The court concluded that Giles's "conduct and statements [reflected] a clear, intelligent, and knowledgeable thought process for anyone in the defendant's difficult situation" and that his statements and actions were "contrary to those of a person who is unable to appreciate either his rights or the effect of waiving his rights" or who lacked free will. *United States v. Giles*, No. 14 CR 112, 2015 U.S. Dist. LEXIS 137232, at *18 (N.D. Ill. Oct. 7, 2015).

Giles was found guilty of the robbery. At sentencing, he argued that the mental health effects of prolonged isolation warranted a reduced sentence. Other arguments in favor of mitigation included Giles's age upon release and the effect of continued imprisonment on his mental health.

The district court sentenced Giles to a total term of 30 years' imprisonment. Because Giles was given credit for time served, and imprisonment was ordered to be served concurrently with the sentence for his other two robberies, Giles's sentence was effectively an additional 18 years of imprisonment for the robbery.

## II. ANALYSIS

### A. The Confession and Conviction

This court considers whether a *Miranda* waiver was made knowing and voluntarily *de novo*, but reviews the district court's findings of fact and credibility determinations under the clear error standard. *United States v. Shabaz*, 579 F.3d 815,

819–820 (7th. Cir 2009). "The evaluation of whether a confession is coerced involves consideration of the totality of the circumstances to determine whether the suspect confessed voluntarily, of his own free will, or whether the police overrode his volition." *Jackson v. Curry*, 888 F.3d 259, 265 (7th Cir. 2018).

The district court received extensive briefing and held an evidentiary hearing prior to denying Giles's motion to suppress. Giles presented Dr. Silberberg's testimony that Giles did not appreciate the significance of the *Miranda* warning given to him before the confession. The district court found Dr. Silberberg's testimony was unsupported, and credited multiple fact witnesses who were actually present the day of the confession.

Bacha testified about the interview itself, stating that he noticed no signs of mental distress or anything else that would cause him concern about the defendant's mental health. The court concluded that "the totality of the evidence establishes that at the time in question, the defendant was a rational person who was in touch with reality, able to consider his options, and make intelligent, rational choices" and that his confession was the "product of a free and voluntary mind." Ultimately, Giles failed to present evidence that the government obtained his confession through coercion.

Furthermore, Giles was identified as the major contributor of DNA on a glove found outside the bank, and a DNA expert testified that the odds of the DNA coming from someone else was one in six trillion. Giles took the stand and offered an implausible explanation for the presence of his DNA—that his gang took gloves from a shared box and his DNA may have

gotten on it while he grabbed a different pair of gloves. In addition to the compelling DNA evidence, two eyewitnesses described the bank robber as matching the general description of Giles. There was sufficient evidence to convict Giles, even in the absence of the confession.

### B.  Sentencing

This court reviews claims of procedural error at sentencing *de novo*. *United States v. Banks*, 828 F.3d 609, 618 (7th Cir. 2016). The district court must "consider a defendant's principal, nonfrivolous arguments for lenience." *United States v. Martin*, 718 F.3d 684, 687 (7th Cir. 2013) (*per curiam*). In considering such arguments, the district court must demonstrate it "considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

Giles asked the court to consider reducing his sentence based on the effects of his solitary confinement. As he did in his motion to suppress, Giles relied on general literature about the effects of solitary confinement and Dr. Silberberg's opinion which the court already found to be unsupported.

Giles argues that the district court did not address his argument that a longer prison sentence would fail as a deterrent because he would be 45 at the end of his sentence for the two other robberies. The filings only contained a general discussion of "aging out" and did not make any argument personal to Giles. Nevertheless, the district court did address and reject this argument, stating that the court would "like to give a great deal of credit to his statement that he has reached an age of maturity where he can look back at what he has done

and realize the many mistakes he has made" but found very little likelihood of rehabilitation based on Giles's extensive criminal background and continued misconduct in prison.

Giles also argues that the district court failed to discuss the negative consequences of continued incarceration on his mental health. The district court *did* address this argument by granting Giles's request that he be placed at a facility with a mental health treatment program.

Lastly, Giles argues the district court failed to ask whether he was satisfied that the court had addressed his main arguments in mitigation. While we have encouraged such a specific inquiry in the past, we have not required it. *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013) ("We *encourage* sentencing courts to inquire of defense counsel whether they are satisfied that the court has addressed their main arguments in mitigation.") (emphasis added). While it didn't use the specific format we articulated in *Garcia-Segura*, the district court invited comments from the parties four separate times during the sentencing hearing. Giles raised no objections at that time as to the sufficiency of the district court's explanation for its sentencing decision.

The district court set forth a well-reasoned explanation for Giles's sentence, and considered all of Giles's non-frivolous arguments. The objections he raises now do not show otherwise.

### III.  CONCLUSION

Giles failed to show that his solitary confinement rendered him incapable of voluntarily waiving his Fifth Amendment

rights. He also failed to show any error in the court's sentencing. The district court's orders are hereby affirmed.