In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1366

TIMOTHY JOHNSON,

*Plaintiff-Appellant,*

*v.*

MICHAEL ROGERS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-02705-JMS-MPB — **Jane Magnus-Stinson**, *Chief Judge.*

ARGUED NOVEMBER 6, 2019 — DECIDED DECEMBER 17, 2019

Before EASTERBROOK, MANION, and BARRETT, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In October 2014 Timothy Johnson showed up drunk for an appointment at a rehab clinic. After he threatened a therapist and the clinic's security guard, the clinic called the police. Two officers arrested and handcuffed Johnson. When he told them that he would run away, they sat him on the pavement next to a patrol car. What happened next led to this suit under 42 U.S.C. §1983.

The events we describe were captured on video. The video lacks a sound track, but the officers' descriptions about what Johnson said are uncontested, because he was too inebriated to remember much about the encounter.

Despite being cuffed behind his back, Johnson managed to stand. The officers walked him backward about 10 feet and sat him down on a patch of grass. They returned to their cars to do some paperwork. In about a minute Johnson got to his knees and managed to stand again. He started to move away, shouting threats and racial taunts. Officer Rogers returned and pulled Johnson backward by his cuffed hands. When that did not return him to the ground, Rogers tried a different means. Johnson fell and suffered a compound fracture of one leg. He contends that this resulted from a kick designed to punish him rather than to return him to a sitting position; Rogers contends that he used a leg sweep (in other words, tripped Johnson to force him backward) rather than a kick. The grainy video does not enable a viewer to distinguish these possibilities with confidence.

Johnson contends that Rogers violated the Fourth Amendment (applied to state actors via the Fourteenth) by using unreasonable force during the encounter. See *Graham v. Connor*, 490 U.S. 386 (1989). The district court granted summary judgment for the officers, giving two reasons. 2019 U.S. Dist. LEXIS 6961 (S.D. Ind. Jan. 15, 2019). First, the judge concluded that Rogers is entitled to qualified immunity, because the procedure that led to Johnson's broken leg did not violate any of his clearly established rights. Second, the judge wrote that, because Johnson pleaded guilty in state court to resisting arrest, *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any claim under the Fourth Amendment while

the judgment of conviction stands. The district court also ruled in defendants' favor on Johnson's federal claim against the City of Indianapolis and its Chief of Police, and his state-law claims against all three defendants. Those additional claims have been abandoned on appeal, and we have amended the caption accordingly.

The district court's two reasons for ruling against Johnson—qualified immunity and *Heck*—are incompatible. A suit barred by the doctrine of *Heck* is premature and must be dismissed without prejudice, because *Heck* holds that the claim does not accrue until the conviction has been set aside. See *Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019); *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). By contrast, a claim barred by the doctrine of qualified immunity fails on the merits and must be dismissed with prejudice. Here the district court dismissed with prejudice, an inappropriate step when *Heck* governs. It is possible to bypass *Heck* and address the merits—after all, *Heck* concerns timing rather than subject-matter jurisdiction. See *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). But the district court did not bypass *Heck*. Relying on it, the court concluded that suit had been filed too soon, and a premature suit must be dismissed without prejudice. We therefore start with *Heck* to determine whether it is appropriate to consider immunity at all.

*Heck* concludes that a person cannot use §1983 to collect damages on a theory irreconcilable with a conviction's validity, unless that conviction has been set aside. (Whether this rule extends past the end of imprisonment is a subject before the *en banc* court in *Savory v. Cannon*, No. 17-3543 (argued Sept. 24, 2019). We assume for current purposes that it does.) Defendants contend that any recovery for excessive force

used at the time of arrest would be inconsistent with Johnson's conviction for resisting arrest. Yet *Wallace v. Kato*, 549 U.S. 384 (2007), holds that a claim of wrongful arrest may proceed even if a person has been convicted of the offense that led to the arrest. Whether the police had probable cause to arrest is distinct from the question whether a criminal conviction, on a different factual record or a guilty plea, is valid. Likewise when the arrested person contends that the police used excessive force. The propositions "the suspect resisted arrest" and "the police used too much force to effect the arrest" can be true at the same time. And so we held in *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), and its successors, such as *Mordi v. Zeigler*, 870 F.3d 703 (7th Cir. 2017), and *Hill v. Murphy*, 785 F.3d 242 (7th Cir. 2015).

Any given plaintiff may choose to rest an excessive-force claim wholly on a contention that the police attacked an innocent bystander, who did not try to fend them off. Then a conviction for resisting arrest would be inconsistent with an award of damages for the arrest. See *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). Johnson, however, does not deny that he tried to obstruct the police from maintaining custody after his arrest. He contends only that Rogers used force that was unreasonable in relation to the nature of his obstruction. This contention can be resolved in Johnson's favor without casting any doubt on the validity of his conviction. It follows that *Heck* does not block this suit.

The qualified-immunity topic is more difficult. Public officials are entitled to immunity unless, by the time of the contested acts, it was clearly established that those acts violated the Constitution. See *Escondido v. Emmons*, 139 S. Ct. 500 (2019) (citing many other decisions). Johnson observes

that it has been clearly established at least since *Graham* (1989) that using excessive force to make an arrest violates the Fourth Amendment. That's not enough, however.

The principle "do not use excessive force" is clearly established but does not tell an officer what kinds of force, in which situations, *are* excessive and therefore does not negate immunity. *Emmons* illustrates the point by holding, first, that "do not use unreasonable force" does not establish any concrete rule "clearly" and, second, that an officer is entitled to immunity for a takedown that enables the officer to control a suspect during an arrest. Only when precedent places the invalidity of a particular action beyond debate may damages be awarded. *Emmons*, 139 S. Ct. at 504, quoting from *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018).

Many decisions hold that there is no clearly established rule forbidding a clean takedown to end mild resistance of the sort that Johnson displayed. See, e.g., *Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (qualified immunity for a bear-hug takedown when an angry suspect walked away from the officer for the second time); *Shafer v. Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) (qualified immunity for a leg-sweep takedown when the intoxicated suspect tried to pull away); *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018) (qualified immunity for an arm takedown accompanied by a knee to the rear of the leg of a suspect who had pulled his hands away from the cuffing procedure).

Any takedown can go awry—some suspects fall clumsily, while others have fragile bones—but, if the officers use steps reasonably likely to effect a clean takedown, an injury does not lead to liability. Assessment under *Graham* is objective; a court asks whether the force used was reasonable, not

whether things turned out badly. See, e.g., *Kelsay*, 933 F.3d 975 (suspect suffered a broken collarbone); *Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013) (qualified immunity for a tackle takedown in which officer landed awkwardly on suspect, causing two broken ribs); *Becker v. Bateman*, 709 F.3d 1019 (10th Cir. 2013) (qualified immunity for a clean throw-down takedown in which the suspect suffered a brain injury). See also *Dockery v. Blackburn*, 911 F.3d 458, 468–69 (7th Cir. 2018), which discusses the need for a margin of error in arrest procedures.

Rogers would like us to stop here. He took down a suspect who violated instructions to stay on the ground and who started to move away. That Johnson suffered a compound fracture is regrettable but does not make any constitutional violation clearly established, Rogers maintains.

If it were beyond debate that all Rogers did was sweep a leg behind Johnson to cause him to topple backward, that would be so. Yet, as we mentioned earlier, the video is not wholly clear. Johnson describes what Rogers did as a swift kick to his leg, not as a leg sweep.

A conclusive video allows a court to know what happened and decide the legal consequences. See *Scott v. Harris*, 550 U.S. 372, 380, 386 (2007). The video we have, however, does not unambiguously establish what Rogers did. On an interlocutory qualified-immunity appeal, a court must not resolve disputed issues of material fact. See *Johnson v. Jones*, 515 U.S. 304 (1995); *Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2017) (en banc).

Still, we think that the video does show two things beyond reasonable question. First, Rogers did not kick Johnson

or otherwise harm him after he was on the ground. Second, Rogers used his legs to undermine Johnson's balance and force him down. Because the video is grainy, and both Johnson and Rogers were moving at the critical moment, we cannot be sure just how the injury occurred. It looks like Rogers tried to use a knee to unbalance Johnson, and, when that did not work, used his foot—but whether Johnson's foot motion was an effort to trip Johnson or a kick to the lower shin (or perhaps the foot) is not possible to discern.

Taking the facts in the light most favorable to Johnson, a jury could conclude that Rogers delivered a kick. And there is no doubt that an unnecessary kick, after a suspect is under control, violates the suspect's clearly established rights. On-the-spot punishment, not reasonably adapted to obtain or keep control, violates the Fourth Amendment (and perhaps other rules as well). See, e.g., *Jones v. Buchanan*, 325 F.3d 520 (4th Cir. 2003) (no qualified immunity for a throw-down takedown accompanied by kneeing a suspect's soon-to-be-broken nose into the floor); *Cowart v. Erwin*, 837 F.3d 444 (5th Cir. 2016) (no qualified immunity for officers who punched, pepper sprayed, and kicked an inmate until he passed out, resulting in a neck sprain and a ruptured eardrum); *Martin v. Broadview Heights*, 712 F.3d 951 (6th Cir. 2013) (no qualified immunity for a tackle takedown accompanied by punches and a neck-grip-leg-wrap grappling move); *Smith v. Troy*, 874 F.3d 938 (6th Cir. 2017) (no qualified immunity for a leg-sweep takedown followed by eight Taser bolts); *Morrison v. Green Township*, 583 F.3d 394 (6th Cir. 2009) (no qualified immunity for a tackle takedown accompanied by repeatedly grinding the face of a teenager into the ground); *Coble v. White House*, 634 F.3d 865 (6th Cir. 2011) (no qualified immunity for a takedown that resulted in an open ankle frac-

ture on which the officer made a verbally abusive suspect walk before dropping him on his face); *Holmes v. Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007) (no qualified immunity for a wristlock and throw-down followed by a face grind for a suspect who pulled his arms away); *Karels v. Storz*, 906 F.3d 740 (8th Cir. 2018) (no qualified immunity for slamming a disagreeable drunk into concrete steps).

What resolves this appeal in Rogers's favor is this: Johnson, who had told the officers that he wanted to run away, was *not* under control when Rogers tried to use his knee to unbalance Johnson, who remained on his feet until Rogers took a further step. If that further step is best understood as a kick, it must *also* be understood as an attempt to regain control. That such an attempt causes injury, perhaps because poorly executed, does not lead to liability.

Nor does the possibility that Rogers had two things in mind: regaining control and punishing Johnson for abusive language. *Graham* holds that the excessive-force inquiry is objective. If the force used was objectively allowable, the officer's state of mind can't make it unconstitutional. *Lester v. Chicago*, 830 F.2d 706, 712 (7th Cir. 1987).

Taking the events as the video depicts them, the district court properly found that Rogers is entitled to qualified immunity.

AFFIRMED