NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 10, 2020[*]
Decided February 11, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1816

| | |
|---|---|
| MARQUELLE L. SMITH,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. |
| *v.* | No. 3:18-cv-00019-SEB-MPB |
| HERBERT ADAMS, BLAKE HOLLINS, and J. T. VANCLEAVE,<br> *Defendants-Appellees*. | Sarah Evans Barker,<br> *Judge*. |

**O R D E R**

After he was arrested during a chaotic nighttime encounter, Marquelle Smith sued three officers, Herbert Adams, Blake Hollins, and J.T. VanCleave, from the Evansville Police Department in Indiana. He alleged that they violated his Fourth Amendment rights when they shot at his car, forcibly removed him from it, and

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

deployed a Taser on him. *See* 42 U.S.C. § 1983. (His complaint included additional claims and named the police department, county jail, and sheriff as defendants, but those claims and parties were dismissed, and Smith has not appealed those dismissals.) Both sides moved for summary judgment, and the district court granted the defendants' motion. Smith appeals. Because the record properly before us establishes that the use of force was reasonable under the circumstances, we affirm.

At the outset, we address Smith's concern that the district court limited the summary judgment record to the evidence designated by the defendant officers—namely, their affidavits, bodycam recordings, and portions of Smith's deposition testimony. Local rules required Smith to support each fact he asserted, and each factual dispute he raised, with citations to admissible evidence in the record or an appendix. S. D. IND. L.R. 56-1(b), (e), (f)(1)(A). Smith did not do so. While he insists that he too designated evidence, including 911 recordings, video footage, and officers' depositions, he did not submit it to the court. (He attached only medical records, his deposition transcript, an affidavit about his injuries, and his criminal appellate briefs to his filings.) For this reason—and because she believed the officers' bodycam recordings corroborated their testimony, *see Scott v. Harris,* 550 U.S. 372, 379–81 (2007)—the district judge ruled that there were no disputed facts and adopted the defendants' account of events.

Though Smith was proceeding pro se, the district judge was entitled to require strict compliance with the local rules after warning him about them. *See McNeil v. United States,* 508 U.S. 106, 113 (1993); *McCurry v. Kenco Logistics Servs., LLC.,* 942 F.3d 783, 786–87 (7th Cir. 2019). Smith did not properly cite or submit his evidence, and courts are not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215, 219 (7th Cir. 2015) (quoting *Bordelon v. Chicago Sch. Reform Bd.,* 233 F.3d 524, 529 (7th Cir. 2000)). So like the district court, we base our factual summary on the officers' submissions, viewing them in the light most favorable to Smith. *See Tolliver v. City of Chicago,* 820 F.3d 237, 241 (7th Cir. 2016). We note that the bodycam footage is dark and frequently obstructed, rendering it susceptible to multiple interpretations. *See Jackson v. Curry,* 888 F.3d 259, 264 (7th Cir. 2018). But the audio clearly captures the officers' orders and Smith's post-arrest verbalizations, so those are not subject to contradiction. *See Scott,* 550 U.S. at 379–81; *Johnson v. Rogers,* 944 F.3d 966, 969–70 (7th Cir. 2019) (extracting undisputed facts from grainy video recording).

Late one evening, officers from the Evansville Police Department responded to a 911 call about shots fired and a group of people fighting. Officers Adams and Hollins were first on the scene and saw three people, including Smith, arguing near a parked car. They approached the group with their flashlights out and guns drawn and ordered the individuals to be quiet, show their hands, and step away from the car. Two complied, but Smith did not hear the order, got into the car, and started the engine. The officers yelled at him to stop and get out. Smith, however, accelerated—so rapidly that the tires squealed and left marks on the road. Adams and Hollins were in Smith's path, so they fired their guns at the tires to stop the car (Adams three times and Hollins once). The shots hit the car, causing Smith to crash into a nearby garage.

Officer VanCleave arrived shortly after the crash, and Hollins and Adams approached the car with their guns out. They again ordered Smith to show his hands and exit the car, but he did not comply and instead threw something out of the window. Hollins attempted to open the car door to get Smith out; at the same time, Smith moved his hands down towards his waist (to unfasten his seatbelt, he says). The officers again ordered Smith to keep his hands outside of the car and get out, and Smith shouted, "Pull me out, pull me out." VanCleave and Hollins then attempted to pull Smith out of the car window, with VanCleave holding Smith's arms to keep his hands in view. Midway through the effort, Smith started forcibly pulling away from the officers, hooked his feet inside the car, and appeared to reach for something. In response, VanCleave deployed his Taser on Smith, and the officers were finally able to pull him out of the car.

Once Smith was on the ground, the officers continued ordering him to give them his hands, but Smith kept them under his stomach. After a brief struggle, they handcuffed him, and he apologized for his behavior. But he soon began cursing and struggling, so officers took him to the ground again. (No officer says so, but audio from the bodycam suggests that they used the Taser on him a second time.) Smith continued to curse and threatened to fight the officers. They eventually subdued him and placed him in custody. About an hour after his arrest, after Smith complained that they had beaten him, officers took him to the hospital for an examination. Smith denied any injuries, but a nurse tended to his eye and removed a Taser prong from his back. Later, at the jail, Smith discovered a second prong.

When searches of his person and car yielded cocaine and marijuana, Smith was charged with drug possession as well as attempted aggravated battery for driving his car at the officers. A jury found him guilty of the drug counts but not guilty of

attempted aggravated battery. Smith sued Adams, Hollins, and VanCleave for using excessive force during his arrest and delaying his access to medical care in the aftermath. The district court entered summary judgment in favor of the defendants, determining that the officers' use of force was reasonable under the circumstances and that, because little time elapsed between the arrest and his hospital visit, and Smith did not tell anyone that he was injured, they did not unconstitutionally impede his access to medical care.

Smith appealed. When he asked to proceed in forma pauperis, the district court certified that his appeal was not in good faith. *See* 28 U.S.C. § 1915(a)(3). In this court, however, a motions judge allowed him to proceed in forma pauperis insofar as he could raise a nonfrivolous argument "that he was subjected to excessive force during and after his removal from the car." That limiting order is one this merits panel may reconsider, *see United States v. Alcantar*, 83 F.3d 185, 191 (7th Cir. 1996), but nothing Smith raises in his briefs persuades us that we should. We limit our review to that issue.

Smith first insists that Adams and Hollins used unreasonable force when they fired at his car because he did not have a gun, was not attempting to flee, and received no warning, and the use of lethal force was disproportionate to the misdemeanor drug possession crimes of which he was later convicted. A police officer's use of force during an arrest is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1985). We evaluate the reasonableness of an officer's action from "the perspective of a reasonable officer on the scene," not through "the 20/20 vision of hindsight." *Id.* at 396. Relevant factors to evaluate include the severity of the crime at issue, whether the suspect posed an immediate threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *See id.*

We agree with the district court that firing four shots at Smith's car was reasonable under the totality of the circumstances. Because Adams and Hollins encountered Smith while responding to a 911 call about shots fired and fighting, they reasonably believed that Smith might be armed. When they ordered him to show his hands, he (unlike the two others on the street) ignored them, entering a car instead. Smith asserts that he was only going home and not trying to flee, but officers knew only that he was disobeying orders and possibly armed. When he accelerated so rapidly that the tires squealed, they reasonably believed that he might hit them and fired their guns to stop the car. Smith emphasizes that he was not convicted of attempting to assault the officers, but his intent is irrelevant to whether the officers reasonably believed that they

faced death or serious bodily injury—the predicate to using deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985); *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018).

Smith's arguments that he was not armed and that he was convicted only of low-level offenses are based on hindsight, but only facts known to the officers at the time of the seizure matter in the reasonableness determination. *See Graham* 490 U.S. at 396; *Fitzgerald v. Santoro*, 707 F.3d 725, 732–33 (7th Cir. 2013). And they fired only four shots at the bottom of the car; there is no dispute that they did not aim for Smith. *See Plumhoff v. Rickard,* 134 S. Ct. 2012, 2022 (2014) (firing 15 shots at suspect fleeing in car was reasonable to end risk posed by his reckless driving).

Smith also contends that the officers used excessive force when they dragged him out of the car, used a Taser on him, and wrestled him to the ground because, he asserts, he was not resisting arrest. But the record, including the bodycam audio, tells a different story of what officers reasonably perceived after the crash. Smith continued to disobey officers' commands and refused to keep his hands in view and to get out of the car. They still did not know if he was armed. After Smith told them to pull him out of the car, he began to forcibly resist the extraction, so they used a Taser on him. The bodycam audio shows that, once Smith was out of the car, he briefly calmed down, apologized, and asked them to pull his pants up (which had slipped during the extraction). But he quickly resumed struggling and began cursing and threatening to fight the officers. They forcefully took him to the ground again (apparently using a second Taser blast) to incapacitate him. Overall, the evidence shows that he was violently resisting arrest, so no reasonable jury could find that the officers acted unreasonably when they forcefully subdued him. *See United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (use of Taser reasonable when suspect disobeyed commands and displayed intent to violently resist police).

AFFIRMED